# HAVILAND v. KANSAS CITY, PITTSBURG & GULF RAILROAD COMPANY, Appellant.

### Division One, February 18, 1903.

1. **Negligence:** EMPLOYEE: SUFFICIENT ASSISTANTS. The master owes his servant the duty to furnish him reasonably safe and suitable appliances for doing his work, and when the work requires men to do it, the men engaged therein are classed as appliances. And this implies that the master will employ a sufficient number of men to safely do the work required to be done.

2. ———: ———: ———: OVERSTRAINING ONE'S SELF. Plaintiff was an able-bodied man, thirty-five years old, and for three months had been in defendant's employ as a section hand, working at taking up old rails and putting in new ones, and had previously assisted in taking up the rails to the lifting of which on to a flat car he

attributes his injuries. Previously he had assisted in loading seventeen like rails, which were six-hundred-pound rails thirty feet long, but then they were loaded by lifting them one end at a time on to the car and six men were engaged in the work. Here two men stood on the car to put the rails in place, and four others pushed them up a greased skid fifteen feet long inclined at an angle of forty degrees, the plaintiff engaged in the work of shoving, and while so engaged, and after about thirty were loaded, he claims to have strained his back in consequence of defendant's negligence in furnishing only four men where eight were necessary. He assisted in the work without objecting that more men were not assisting and without complaining that the work was dangerous. *Held*, that, the evidence showing that he was injured by his own act in employing more effort than was necessary without the order or act of any one else, he was properly nonsuited.

3. ——: ——: ——: ——: PRIMA FACIE CASE. Where the physical facts and plaintiff's own testimony and conduct show that if he strained his back in assisting three other section hands slide six-hundred-pound rails up a skid on to a flat car, he did so without being compelled, ordered or expected to do so by any one and without any apparent reason for doing so, he makes no prima facie case of negligence on the part of the company in not furnishing a sufficient number of men to do the work.

4. ——: ——: ——: ——: EXPERT WITNESS. A witness testified that four years before he had assisted in loading twenty-five cars with six-hundred-pound rails by shoving the rails up greased skids, and that it required ten men to load such rails in this way, and sixteen to eighteen to lift them up and put them on the car, and that an ordinary man could lift two hundred pounds. *Held*, that no court is obliged to permit such manifest nonsense to go to the jury as expert testimony.

Appeal from Barton Circuit Court.—*Hon. H. C. Timmonds*, Judge.

REVERSED AND REMANDED *(with directions)*.

*Lathrop, Morrow, Fox & Moore* for appellant.

(1) Defendant's demurrer to the evidence should have been sustained. Worlds v. Railroad (Ga.), 25 S. W. 464; Ferguson v. Cotton Mills (Tenn.), 61 S. W. 53; Cagney v. Railroad, 69 Mo. 424; Dunlap v. Mfg. Co. (Mass.), 18 N. E. 599; Railroad v. Rogers, 57 Fed. 378; Railroad v. Drake, 53 Kan. 1; Railroad v. Moore, 49 Kan. 617; Walsh v. Railroad (Minn.), 8 N.

W. 145; Fremont Brewing Co. v. Hansen (Neb.), 91 N. W. 279; Steinhauser v. Spraul, 127 Mo. 541; Watson v. Coal Co., 52 Mo. App. 371; Keegan v. Kavanaugh, 62 Mo. 232; Railroad v. Mitchell, 18 S. E. 290; Ames v. Railroad (Ind.), 35 N. E. 117; Stone Co. v. Wolf (Ind.), 38 N. E. 52; Kelley v. Railroad, 5 Am. and Eng. R. R. Cas. 469; Rush v. Railroad, 136 Kan. 137; Larson v. Railroad, 44 Am. and Eng. R. R. Cas. 529; Smith v. Railroad, 41 Am. and Eng. R. R. Cas. 289; Swanson v. City (Ind.), 33 N. E. 1003; Weeks v. Freemont Mill Co. (Wash.), 29 Pac. 215; Hart v. Naumburg (N. Y.), 25 N. E. 385; Railroad v. Ross (Ky.), 56 S. W. 14; Railroad v. Spellman (Tex.), 34 S. W. 298; Railroad v. Lempe, 56 Tex. 19. (2) The court committed no error in the exclusion of evidence. Benjamin v. Railroad, 133 Mo. 274; Koons v. Railroad, 65 Mo. 592; Hurst v. Railroad, 163 Mo. 309; Lee v. Knapp, 155 Mo. 610; Gutridge v. Railroad, 94 Mo. 458; Goble v. Kansas City, 148 Mo. 477; Dammann v. St. Louis, 152 Mo. 200; Brown v. Plank Road Co., 89 Mo. 155; King v. Railroad, 98 Mo. 240; Eubank v. City, 88 Mo. 655; Gavisk v. Railroad, 49 Mo. 276; Madden v. Railroad, 50 Mo. App. 666; Hoffman v. Railroad, 51 Mo. App. 273; Railroad v. Clouch, 2 Kan. App. 728; Graham v. Railroad, 139 Pa. St. 161; Bergen v. Traction Co., 41 Atl. 837; Atchison v. Henry, 57 Kan. 154; Railroad v. Modesett, 124 Ind. 212; McCloskey v. McCloskey, 69 Mo. 199.

*Cole & Burnett* for respondent.

(1) The court committed error in excluding and striking out competent evidence, tending to show negligence on the part of defendant. The testimony stricken out was that of an old and experienced railroad man, who was familiar with the different ways of loading steel rails, and by his knowledge and experience knew how many men were required to load the steel rails in the way they were being loaded when plaintiff was injured, with reasonable safety to the men en-

gaged therein. An expert is said to be one who, by practice or observation, has become experienced in any science, art or trade. It may be laid down as a general rule that the opinion of a witness possessing peculiar skill is admissible whenever the subject of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without assistance. Goins v. Railroad, 47 Mo. App. 181; Davidson v. Railroad, 34 Minn. 53, 24 N. W. 324; Cook v. Railroad, 57 Mo. App. 479; Cole v. Clarke, 3 Wis. 323; Benjamin v. Railroad, 50 Mo. App. 609; Eyerman v. Sheehan, 52 Mo. 221; Johnson v. Railroad, 96 Mo. 348; Fitts v. Railroad, 59 Wis. 323; s. c., 18 N. W. 186; Armstrong v. Railroad, 45 Minn. 85; s. c., 47 N. W. 459; Boettger v. Iron Co., 124 Mo. 104; Railroad v. Groethe, 31 S. W. 197; Betts v. Railroad, 60 N. W. 623; s. c., 92 Iowa 343. (2) Defendant's demurrer to the evidence should have been overruled. And the court's order setting aside the nonsuit and granting new trial was proper. Thorpe v. Railroad, 89 Mo. 663; McMullen v. Railroad, 60 Mo. App. 231; Fogus v. Railroad, 50 Mo. App. 250; Doyle v. Trust Co., 140 Mo. 15; Bender v. Railroad, 137 Mo. 240; Young v. Webb City, 150 Mo. 341; Rine v. Railroad, 100 Mo. 228; Baum v. Fryrear, 85 Mo. 151; Keown v. Railroad, 141 Mo. 87; Herdler v. Buck Stove Co., 136 Mo. 3.

MARSHALL, J.—This is an action for five thousand dollars damages alleged to have been sustained by the plaintiff, employee of the defendant, while engaged, as a member of a section gang, in loading steel rails on to a flat car, caused it is averred, by the employment, by defendant, of an insufficient number of men to do the work. The injury is said to have resulted from the plaintiff overexerting himself, in consequence of which he strained his back. The negligence charged in the petition is the employment of only four men, where eight are alleged to have been necessary. The answer is a general denial, and a plea of assumption of risk.

At the close of the plaintiff's case the court sustained a demurrer to the evidence, and also sustained a motion to strike out the testimony of a witness, called as an expert, and in consequence the plaintiff took a nonsuit with leave. Thereafter, the court set aside the nonsuit and granted the plaintiff a new trial, assigning as ground therefor the sustaining of the demurrer to the evidence and of the motion to strike out the expert testimony. From this order the defendant appealed.

The case made by the plaintiff is this:

Prior to the alleged accident, the plaintiff was an able-bodied man, thirty-five years of age, and for the preceding three months had been in the employ of the defendant as a section hand, taking up old rails and putting in the new ones, and had previously assisted in taking up and piling the rails hereinafter spoken of. The petition avers, and the evidence shows, that on a prior occasion, three or four weeks before the accident, he had assisted in loading seventeen steel rails, like those he was loading on this occasion, on to a flat car; that there were six men then engaged in such work, and that they loaded them by lifting one end of the rail from the ground and resting it on the top of the flat car, putting a pick handle in the standard slots on the side of the car to prevent the end so lifted from sliding off of the car, and then lifting the other end of the rail from the ground and placing it on the top of the flat car. On the day of the accident, a section gang composed of seven men were engaged in loading rails on to a flat car. The rails were thirty feet long and weighed six hundred pounds each. The top of the flat car was four and a half feet above the top of the railroad track, and the top of the track was eighteen to twenty inches higher than the ground on which the rails were piled. The gang constructed an incline from the ground to the top of the flat car, by taking two steel rails about fifteen feet long, tapering at one end, and rested one end on the top of the car and the other end on the ground, or on a cross-tie, and then greased

the skids to make the rails slide easily. Then five of the seven men would take a rail and slide or push it up the incline, two standing at either end and one at the middle of the rail, and the two remaining members of the gang, who were stationed on the top of the flat car, would receive the rail that was thus pushed up the incline by the five men, and would put it in a proper place on the car. There were some fifty or sixty rails to be loaded. When about one-half had been loaded, one of the men who was on the top of the car, "pinched his finger" and quit, and one of the five men who had been helping to push the rails up the incline, took the place on the car, of the hurt man. The remaining six men continued the work, four shoving up the rails and two putting them in place. The plaintiff all the while was engaged in the work of shoving. While so engaged with the other three shovers, the plaintiff claims he strained himself. He told one of the fellow-servants of it at the time, but neither then nor afterwards did he say anything to the foreman, who was present, about hurting himself, nor about the gang being insufficient; on the contrary, even after he says he was hurt, he continued in the work until all the rails were loaded, and also helped to load a lot of cross-ties, and never said anything to the foreman about being hurt, nor did he suffer any further strain. The plaintiff called James McCaliment as an expert. He qualified by showing that four years before he had assisted in loading twenty-five cars with rails by means of skids, as was done in this case, and then said it would require ten men to so load such rails; that usually sixteen to eighteen are employed to load rails on a car, and that instead of skids the men pick up the rails and place them on the car. He also said that an average man can lift two hundred pounds, and hold it up for a minute.

This is the expert testimony that was stricken out by the court, and which ruling is assigned as a ground for granting a new trial.

## I.

The first question in this case is whether the trial court erred in sustaining a demurrer to the evidence.

A master owes his servant a duty to furnish him a reasonably safe place and reasonably safe and suitable appliances for doing his work. When the work requires men to do it, the men engaged therein are classed as appliances. [Wood on Railroads, p. 1758; Thorpe v. Railroad, 89 Mo. l. c. 663.] This duty, however, does not make the master an insurer of the servant. [Grattis v. Railroad, 153 Mo. l. c. 403; Minnier v. Railroad, 167 Mo. l. c. 113.] On the other hand, the servant assumes the risks that are ordinarily incident to the business. The servant is not obliged to quit because the master has failed in his duty, if he reasonably believes that by the exercise of proper care and caution he can safely use the appliances furnished, but if the danger of using such appliances is obvious, patent, or such as to threaten immediate injury, then the servant assumes the risk in using them, or in remaining in the master's service. [Minnier v. Railroad, 167 Mo. l. c. 114, and cases cited.]

Apply these principles of law to the case made by the plaintiff and we have this result. According to the plaintiff's testimony, three or four weeks before the accident, he and five others had loaded seventeen similar steel rails on to a flat car. They did it by first lifting one end of the rail and resting it on the car, and then lifting the other end of the rail up onto the car. Hence, the plaintiff knew that six men could thus load a six-hundred-pound rail on to a flat car. If they had picked the rail up bodily, instead of only one end at a time, it would have required each of the six men to lift only one hundred pounds each, but by lifting only one end at a time, it would be easier and would not necessitate each man to lift as much as if the rail was lifted all at once. In addition to this, the plaintiff knew that he had assisted in taking up and piling these identical rails. With this experience before him,

the plaintiff was required, on this occasion, with four others and later with three others, not to lift the rail, but to shove or slide it up an incline that was greased. It needs no testimony to show that it does not require as much force or power to shove a rail up such a greased incline as it does to lift such a rail bodily. This is a question of physics with which every fairly educated person is more or less familiar, and in addition, it is a matter of common sense that would be at once recognized as true by any one, without respect to any education. When the plaintiff was called upon, with three others, to shove these rails up this incline, he therefore knew that six men had picked up such rails, one end at a time, and loaded them on to a flat car, and the question he had to decide at the time he was then called upon to act was, are five men or four men enough to shove this rail up this inclined plane?

If the two men who were on the top of the car were enough to handle the rails and place them in position on the car after the four men shoved them up on to the car, it is at once apparent that the four men ought to be sufficient to shove the rail up the incline. If six men could load the rails by lifting one end at a time, it would seem that four men ought to be enough to shove the rails up the greased incline. Given a rail weighing six hundred pounds, and four men to handle it, it follows that each man would only have to shove one hundred and fifty pounds of the weight. If six men can lift six hundred pounds, it seems only reasonable to believe that four men can shove six hundred pounds up a greased incline. These considerations and facts were known to the plaintiff, and he entered upon the work without objection and continued in the work after one of the men got hurt and retired. He knew the weight to be handled and the force supplied to handle it. There were fifty or sixty rails to be loaded. About a half had been loaded before the accident is alleged to have occurred. Actual experience in so loading such rails with such force had, therefore, taught the plain-

Vol 172 mo—8.

tiff whether or not the force was adequate. He continued in the work without objection. Then he says he strained his back. He gives no reason for so doing. He does not pretend that any of his fellows shirked his duty or that anything unusual happened to throw any more weight upon him than his due proportion or than he had been successfully and safely handling. He gives no explanation, whatever, of how or why he was injured. But he says he strained his back. Even then he did not complain to the master nor object that the force was inadequate. He said nothing to the master about being injured. He continued to work in the same way, with only the same force, until all the rails were loaded, and even thereafter, for he assisted thereafter in loading some cross-ties onto a car. So far as the plaintiff's own testimony is concerned, it nowhere appears that the force employed was inadequate, nor that anyone required or expected the plaintiff to strain himself, or to lift more than any ordinary man could lift or shove, or more than the plaintiff had previously lifted or shoved with safety, nor yet that anything unusual occurred to cause the injury, nor, in fact, is there any attempt to give a reason or explanation for the happening of such an injury.

The only other evidence bearing upon the insufficiency of the force, is the testimony of the alleged expert, McCaliment. He testified that four years before he had assisted in loading twenty-five cars with rails by shoving the rails up greased skids, as was done in this case, and that it required ten men to so load such rails. He further said that usually rails were loaded by simply lifting them up bodily and putting them on the car, and that it required from sixteen to eighteen men to load them in that way. He further said that an ordinary man can lift two hundred pounds. Or, in other words, according to such *expert* testimony, a man can lift two hundred pounds but can only shove seventy-five pounds up an incline plane. And while an ordinary man can lift two hundred pounds, it takes sixteen section hands to lift six hundred pounds; that is, an or-

dinary man can lift two hundred pounds but a section
hand can only lift one-sixteenth of six hundred pounds,
equal to thirty-seven and a half pounds.

This is the *expert* testimony that the court struck
out. And is it surprising that the court did so? Is
any court obliged to believe any such absurd testimony,
or to allow such manifest nonsense to go to a jury? Is
it not an insult to common intelligence to be asked to
believe that a section hand can only lift thirty-seven
and a half pounds? Or that such a section hand can
only push a seventy-five pound weight up a greased
incline plane of about forty degrees?

It is too obvious for debate that such testimony
shows conclusively that the witness was not an expert
or else that he was playing upon the credulity or gul-
libility of the jury. The court properly struck out
such testimony. But even if the court did err in so
doing, and even if such testimony be still treated as in
the case, the plaintiff made out no case that entitled
him to go to a jury, and, therefore, the court properly
sustained the demurrer to the evidence.

For the physical facts and plaintiff's own testi-
mony and conduct completely nullify all such expert
testimony and show that it is unreliable, and, in addi-
tion, they show that if the plaintiff strained his back
he did so without being compelled, ordered or expected
to do so by anyone, and without any apparent reason
for doing so, and, therefore, he did not make out a
prima facie case.

The plaintiff cites and relies on the case of Thorpe
v. Railroad, 89 Mo. 650. In that case, the negligence
consisted in not having a sufficient number of men in
a switching crew, to convey the proper signals to the
engineer, in consequence of which the engine was
moved while the plaintiff was between the cars, at-
tempting to couple them. It is apparent, therefore,
that that case has no application to this case. There
the plaintiff was injured by the act of the engineer
in moving the train prematurely. Here the plaintiff
was injured by his own act, in employing more effort

than was necessary and without the order or act of anyone else.

The plaintiff further cites Fogus v. Railroad, 50 Mo. App. 250. That case, however, is different from the case at bar, in the following respects: first, the plaintiff objected to doing the work before it was done, because he considered it dangerous and because the force of men was insufficient, but the foreman ordered him to proceed and said it was safe and engaged in the same work himself; second, the injury to the plaintiff in that case was caused by the workmen on each side of the heavy iron wheel being removed, shoving against each other to prevent it from careening on them. Neither of these conditions are present in this case. In addition to this, in that case, the weight to be moved was fourteen hundred pounds, and the moving force was four men, while here there were four men to move six hundred pounds. Moreover, in that case, it was an iron wheel which was likely to fall over on its side at any time, as it did, while here it was a rail that was pushed up an incline and could not fall over at all.

The plaintiff also relies on McMullen v. Railroad, 60 Mo. App. 231. That was a case wherein the plaintiff was engaged in lifting rails and throwing them from the track, and was injured by the rail "falling back upon his foot." The sole negligence alleged in that case was that the railroad did not furnish an adequate number of men to do the work, in that, it furnished only *three* men, while the petition alleged that *four* were necessary. So if that case furnishes any light for the proper adjudication of this, it shows that the force furnished in this case was sufficient, for it was charged therein that four men were sufficient. It also shows that three men were *lifting* the rails, whereas here, there were four men shoving—not lifting—the rails. There can be no doubt as to the general legal principles enunciated in that case, but the facts in judgment there prevent that case from being of any assistance to the plaintiff in this case.

The case of Worlds v. Railroad, 25 S. E. 646, is more applicable to this case. There a car became derailed, and the plaintiff, with others, was required to carry cross-ties for about a hundred yards. He objected because they were too heavy to carry that far. The yardmaster ordered him to continue in the work, saying he was as much able to do so as the rest of them. The plaintiff there had had no previous experience in carrying such cross-ties, and claimed that he strained his back while doing so. The trial court sustained a demurrer to the petition which set out these facts, and the Supreme Court affirmed the judgment. The syllabus in that case is as follows:

"1. When one enters the service of another, he impliedly assumes the usual and ordinary risks incident to the employment about which he is engaged, and, in discharging the duties which he has undertaken to perform, he is bound to take notice of the ordinary and familiar laws of nature applicable to the subject to which his employment relates; and if he fails to do this, and in consequence is injured, the injury· is attributable to the risks of the employment, and the master is not liable.

"2. Where an employee of a railroad company, in the discharge of his duties, is directed to lift and carry an ordinary object, like a cross-tie, he is bound to take notice that it is heavy, and that a certain amount of physical strength will be required to accomplish the task; and if he misconceives the amount of physical strength to be exerted, and overstrains himself in lifting the tie, and is thereby injured, the master is not liable. The fact that he was acting under the orders of a superior at the time does not alter the question, even though he might have had reason to believe that disobedience of the order would result in his dismissal."

The case of Ferguson v. Cotton Mills, 61 S. W. 53, was a case where the plaintiff was engaged in moving cotton from one vat to another on a large four-wheel truck. One of the wheels fell into a hole in the floor, made by a defect in the flooring. The plaintiff,

with another servant, attempted to lift the wheel out of the hole, and strained his back. He had only been so employed for five days, and had no previous experience in lifting the truck and no knowledge as to its weight. It was held that he could not recover and that he could not "hold the master liable for over-exerting and straining himself. He is the best judge of his own lifting capacity, and the risk is upon him not to overtax it."

The cases of Walsh v. Railroad, 8 N. W. 145; Fremont Brew. Co. v. Hansen, 91 N. W. 279; Railroad v. Drake, 53 Kan. 1; and Railroad v. Moore, 49 Kan. 616, rest on substantially the same principles.

Without further elaboration, it is apparent that either with or without the testimony of the alleged expert, the plaintiff failed to make out a case for the jury, and, therefore, the court properly sustained the demurrer to the evidence. For the same reasons, the court erred in granting a new trial, and, therefore, its judgment in so doing is reversed, and the cause remanded with directions to set aside the order granting a new trial, and to permit the judgment of nonsuit to stand. All concur.