## Richmond.

## GROVER C. LLOYD v. NORFOLK AND WESTERN RAILWAY COMPANY.

November 15, 1928.

Absent, Chichester, J.

The opinion states the case.

*Joseph F. Moore, T. Russell Cather* and *A. Garland Williams*, for the plaintiff in error.

*W. T. Lewis, Aubrey G. Weaver* and *F. M. Rivinus*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This is an action by notice of motion, brought by Grover C. Lloyd to recover of the Norfolk and Western Railway Company damages for an alleged injury sustained while plaintiff was employed as a section hand by the defendant. There was a trial by a jury, which resulted in a verdict for the plaintiff in the sum of $10,000.00. Upon motion of the defendant the court set aside the verdict of the jury and entered judgment for the defendant, and to that judgment this writ of error was awarded.

The case, from the standpoint of the plaintiff, is set forth in the notice of motion, which alleges that the defendant is a common carrier by railroad, engaged in interstate and intrastate commerce through Clarke county; that on the 13th day of February, 1923, the plaintiff, under the orders and directions of the foreman of the defendant, was engaged in the repair and maintenance of the track and roadbed south of Boyce station, in said county, which work included the lifting of heavy railroad rails, and that the rails which had to be lifted were much too heavy for the four men who had to lift them; that four men were grossly insufficient and inadequate to perform such work with reasonable safety, all of which was well known to the defendant and its foreman who had control of the work directed

by him, and that by the exercise of ordinary care he should have foreseen the risk and danger to which plaintiff was exposed in lifting and carrying the said rails without additional assistance; that it was the duty of the defendant to provide a competent foreman to direct the work being done, and to provide a sufficient number of men to perform the work with reasonable safety, and that defendant failed to supply a competent foreman and a sufficient number of men; that plaintiff, without negligence on his part, in compliance with the orders of said foreman, and without sufficient assistance, undertook to lift and carry the rails afore-said, and in doing so suffered great and irremediable damage to his back and to the nerves, muscles, bones and joints of his body by straining and spraining the same, and by the loosening and displacing of the *sacro illiac* joint of the right hip, from all of which he suffered great pain and was obliged to expend large sums of money; and that the proximate cause of the injury was the failure of the defendant to furnish a competent foreman and a sufficient number of men to do the work required.

In the petition the right to recover is put upon the following grounds: First: Incompetency of the section foreman, Rogers; Second: An insufficient number of men to do the required work; and Third: That the alleged injury resulted from an act performed by plaintiff while acting in an emergency caused by an approaching train.

The evidence may be thus summarized: Lloyd was employed as a section hand by the defendant under the supervision of H. E. Rogers, foreman. On the morning of February 13, 1923, he reported for work and was assigned, along with three other workmen, to the immediate task of loading rails on a push car or

dirt truck which was situated on the stop-in track, east of the main track a distance of about sixty feet. The rails had to be moved across the main track in order to load them upon the push car. The method employed to accomplish this was that Lloyd and Carper would take hold of a rail at one end with tongs or dogs, and Royston and Ritter would take hold of the other end in like manner. No effort was made to carry the rail; they would merely slide it across the rails of the main track, and then all would, by raising the ends, load it upon the push car. After moving several rails, Rogers, the foreman, went to the near by railroad station, stating to the workmen before leaving: "Boys, we won't load any more rails until 28 passes." The workmen, however, continued to load the rails, and as they had the eighth and last rail lying across the main track, passenger train No. 28, which had to pass over the track where the rail was lying, blew for the station at Boyce. The intervening distance between the train and the rail upon the track when the whistle blew does not appear. Lloyd stated that the train was just "around the curve" from where he was working. When the whistle blew, Ritter, the man working opposite Royston, yelled: "My God, here comes 28." In his effort to assist in removing the rail, Lloyd claims that he suffered a separation of the right *sacro illiac* joint, which was caused by "a sudden lift."

There is no averment in his notice of motion that the injury occurred while the plaintiff was acting in an emergency, nor that the same was caused by "a sudden lift." It is a familiar rule of law that a plaintiff can only recover upon the case made by the pleadings. The only grounds of recovery in the notice are incompetency of the foreman and an insufficient number of men to do the required work.

■ As to the first proposition, it is urged upon us that while there is no positive proof that either Rogers, the foreman, or Ritter, the alleged acting foreman at the time of the injury, were incompetent, it does appear that Rogers ordered four men to move rails thirty feet long and weighing eleven hundred pounds each, and left these men in charge of Ritter while he went to the station, knowing train 28 was about due, and that these circumstances indicate negligence of the grossest sort and warrant the jury in so finding.

■ We are unwilling to concur in this contention. The uncontradicted evidence is that Rogers had been section foreman for a period of twenty years, and, except for a strained conclusion based upon an infer- ence, was thoroughly competent in every respect. The only evidence tending to show that Ritter was the acting foreman at the time of the injury is the state- ment of Lloyd that, in the absence of Rogers, Ritter was the acting foreman. Though it appears that Lloyd was present, there is no denial of the statement of Rogers, that he told the workmen to stop loading rails until train No. 28 passed. There is no evidence for the plaintiff that Rogers, on the morning in ques- tion, placed Ritter in charge while he went to the station. It does appear, however, from the evidence of Rogers that he did not place Ritter in charge of the men. Even though it be conceded that Ritter was in charge of the men and directed the further loading of the rails, it plainly appears that the orders of the super- ior were to cease work until train 28 had passed. When confronted with conflicting orders, it was the duty of the employee to rely upon the orders of the superior, or else he will be held to have assumed the risk of the employment when he is in as good a position as his acting foreman for ascertaining and understanding the situation.

We come now to a consideration of the question whether or not the alleged failure of the defendant to furnish a sufficient number of men to do the work was the proximate cause of the injury.

In *Chesapeake & O. Ry. Co.* v. *Heath*, 103 Va. 66, 48 S. E. 508, it is said: "The party who affirms negligence must establish it by proof sufficient to satisfy reasonable and well balanced minds. The evidence must show more than a probability of a negligent act. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established. This court has repeatedly held that when liability depends upon carelessness or fault of a person or his agent, the right of recovery depends upon the same being shown by competent evidence; and it is incumbent upon such plaintiff to furnish evidence to show how and why the accident occurred—some fact or facts by which it can be determined by the jury—and not left to conjecture, guess or random judgment, upon mere supposition, without a single known fact."

The fact that plaintiff had lifted and loaded seven rails with the same assistance demonstrates that the work could be accomplished with safety by the force then employed. While it is true that the plaintiff testified that at the time new rails were put in the main track a large force of men was employed to lay them, and that he had never known of an instance where a force of four men was required to *lift* thirty-three foot rails, he does not state that four men could not with reasonable safety slide rails across the main track, and by lifting them, an end at a time, load the rails on a push car with safety. As far as the evidence shows, no one was required to lift the rails in order to place them in a position to be loaded. Furthermore, it was not necessary to lift the rail in question to re-

move it from the main track in time for the safe passage of train No. 28. All that was necessary to be done was to "switch" the rail around and "dump" it on the roadbed, all of which, according to the evidence, would have required only but a few seconds.

In *Norfolk & P. B. Line* v. *White*, 143 Va. 875, 129 S. E. 339, it is said: "The fact of an accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the employee to establish, that the employer has been guilty of negligence, and on the argument before this court counsel state that the cause of injury was ordering four men to handle it when there should have been six. The four men had handled the car without mishap to the point where they were going to "set it down," and as a matter of law from the facts proven it does not seem that a reasonably prudent person should have any reason to anticipate that such an accident was any more likely to happen with four men t han six."

Even though we concede that there is a conflict of evidence on the question of negligence, we cannot ignore the contention of the defendant that the plaintiff assumed the risk incident to the employment. To meet this contention, plaintiff invokes section 162 of the Constitution, in part, as follows:

"Knowledge by any such railroad employee injured, of the defective or unsafe character, or condition of any machinery, ways, appliances or structures shall be no defense to an action for an injury caused thereby."

Section 162 of the Constitution is not applicable to the case at bar, as no claim is asserted because "of defective or unsafe ways, appliances or structures." Then, again, it is not applicable because it appears from the proof that plaintiff was engaged in inter-

state commerce, and from the pleadings it appears that the case was brought under the Federal employer's liability act. (45 U. S. C. A. sections 51-59.)

In *Southern Railway Company* v. *Jacobs*, 116 Va. 189, 81 S. E. 99, in discussing the liability act, Judge Keith said: "To the act, then, we must look for law governing the liability of railroads and their employees *inter sese*, and in order to determine their relative privileges, duties and obligations. It in itself and of itself constitutes the sole and supreme law as to the subjects on which it touches, and it is not to be pieced out by reference to State legislation."

There is no question that the defendant's line of railroad extends from Roanoke, Virginia, to Hagerstown, Maryland, which brings it under the provisions of the act of Congress. *Davis* v. *Powell*, 142 Va. 711, 125 S. E. 751, 128 S. E. 242.

That the doctrine of the assumption of risk is maintainable under the Federal employer's liability act has been held by this court. In *Davis* v. *Powell*, *supra*, Judge Chichester, delivering the opinion of the court, said: "Of course, the fellow servants' doctrine has been abolished under the Federal employer's liability act, but the doctrine of the assumption of risks, as above shown, is still applicable to the Federal act in its original and undiminished force, save in the one instance not pertinent here."

The rule thus laid down has reference to the risks that are naturally and ordinarily incident to the work which the servant undertakes, as well as the risks arising from the employer's negligence, the peril of which the servant assumes when he remains in the employ of the master after he knows, or should know, the danger to which he is exposed.

Lloyd had been in the service of the railway company for three years. He was a man of splendid physique and mentally all right. He had as much knowledge, no doubt, as did the foreman, as to the proper method of doing the work. He was aware of the train schedules. In fact, he had received orders to desist from loading the rails until the passing of train No. 28. Under these circumstances, we are of opinion that the plaintiff assumed the risks of the employment.

The doctrine of assumption of risk has been fairly established in Virginia, and the decisions of this court are in accord with the weight of authority.

In 26 Cyc. 1195, it is said: "Where a servant knows or *ought to know* that the master has furnished too few servants for the reasonably safe prosecution of the work, he assumed the risk incident to the working with insufficient assistance."

In 18 R. C. L., section 173, we read: "Ultimately, the question becomes one of comparative knowledge; if an employee is in as good a position as his employer for ascertaining and understanding the situation, and equally well knows and appreciates the conditions, he cannot be allowed to complain for injuries sustained by working therein. For example, it is held that a servant cannot hold his master liable for injuries caused by the fact that the working place was unsafe, if he was in as good a position to ascertain and understand the situation, and does equally well know and appreciate the conditions, as the master."

In *Morris* v. *Alvis*, 130 Va. 441, 107 S. E. 667, Judge Kelly said: "It is true that as a general rule an employee does not assume risks arising out of the negligence of the master, but when the rule is thus stated, it has reference to the ordinary risks of the business, and there is nothing better settled than that

where the danger is open and obvious and the servant continues to work with knowledge of the danger, he assumes the risk, whether it be a risk ordinarily incident to the business or not, and whether it be due or not to the master's want of reasonable care as an original proposition. *This principle is nowhere more firmly established than in Virginia*, and is not in any way negatived, but, on the contrary, is distinctly recognized in the cases of *Norton Coal Co.* v. *Murphy*, 108 Va. 528, 62 S. E. 268; *C. & O. Ry. Co.* v. *Meadows*, 119 Va. 34, 89 S. E. 244; and *Clinchfield Coal Corporation* v. *Ray* 121, Va. 318, 93 S. E. 601, relied on by plaintiff.''

In *Houston's Admx.* v. *Seaboard Air Line Ry.*, 123 Va. 298, 96 S. E. 273, Judge Burks said: "It has been repeatedly held by this and other courts that assumption of risk is a matter of contract, and that contributory negligence is a matter of conduct. *Ches. & Ohio R. Co.* v. *Meadows*, 119 Va. 57, 89 S. E. 244, and cases cited. But the distinction has not always been observed in the application of the law to the facts of particular cases. By the contract of service the servant impliedly assumes the risks of all dangers that are naturally and normally incident to that service, and not due to the master's negligence. *Gila Valley R. Co.* v. *Hall*, 232 U. S. 101, 34 S. Ct. 229, 58 L. Ed. 521. The servant, also, assumes by his contract of service the dangers thereafter arising in the course of his employment which becomes known to him, or which by the exercise of ordinary care on his part ought to become known to him, including, of course, all open and obvious dangers. As to such dangers arising after entering into contract of service, it is the duty of the servant to bring them to the attention of the master and ask their removal, and if the master refuses to remove them, the servant should

quit the service; but if he fails to notify the master and continues in the service when he knows or ought to know of the danger, he thereby assumes the risk. It is a part of his contract of service that he will thus assume such risks. He impliedly agrees at the time of entering into the contract of service that, as to such dangers, he will either report them and have them remedied, or else will assume the risk of them, if he continues in the service. *As to this class* of dangers, the rule is the same whether the master be guilty of negligence or not."

The same principle is recognized in the cases of *Clinchfield Coal Corp.* v. *Cruise,* 117 Va. 645, 86 S. E. 135; *Addington* v. *Guest's River,* 130 Va. 604, 108 S. E. 695; *Mason* v. *Post,* 105 Va. 500, 54 S. E. 311, 11 L. R. A. (N. S.) 1038; *Davis* v. *Powell,* 142 Va. 711, 125 S. E. 751, 128 S. E. 242; and *Seaboard Air Line R. Co.* v. *DeLoatch,* 149 Va. 338, 141 S. E. 121.

There is another aspect of the case which precludes a recovery. Reduced to its last analysis, the instant case involves the question, whether or not Lloyd knew what weight he could lift with safety. While this court has not been called upon to consider what the books term a "lifting case," the weight of authority is to the effect that, as a general rule, a plaintiff who has been injured by overlifting or overexerting himself, is not entitled to recover. This rule is based upon the assumption that in such a case the servant is a better judge of his strength than the master can possibly be, and therefore assumes the risk.

In *Stenvog* v. *Minnesota Transfer Co.,* 108 Minn. 199, 121 N. W. 903, 25 L. R. A. (N. S.) 362, 17 Ann. Cas. 240, it appears that the plaintiff was regularly employed in trucking goods in defendant's warehouse. He was taken from this work which he was especially

employed to do, and was directed to assist another employee in loading heavy switch rails into a box car standing on defendant's yards. After working thirty minutes, he complained to the foreman that the work was too heavy for him, but the foreman told him to "go on;" afterwards, while lifting one of the heavy rails, he sprained his back, in consequence of which he had to abandon his work and submit to medical treatment. The court in its opinion said: "The conclusion of the learned trial judge was correct. 'I think,' the court said, 'there is no principle of law that makes the master the guarantor of the sufficiency of a man's muscles, so that, if a man is set to work that is too hard for him to do, and in the attempt to do it over-tires himself, or over-uses his muscles voluntarily, he cannot recover.' The authorities fully sustain this proposition. In *Worlds* v. *Georgia R. Co.*, 99 Ga. 283, 25 S. E. 646, the plaintiff was directed to lift and carry a cross-tie. He complained that the ties were too heavy for him. Nevertheless, he was directed to 'tote them.' In an action brought for consequent injury, it was held that the servant was bound to take notice of the ordinary and familiar laws of nature, applicable to the subject to which his employment relates, and if he fails to do this and in consequence is injured, the injury is attributable to the risk of the employment and the master is not liable. So in *Ferguson* v. *Phoenix Cotton Mills*, 106 Tenn. 236, 61 S. W. 63, the plaintiff was ruptured while attempting to lift a truck wheel out of a drainage hole. It was held that he 'was the best judge of his own lifting capacity and the risk is upon him not to overtax it.' "

In Ruling Case Law, Supp. Vol. 4 page 1201, we read: "The general rule is that an employee who injures himself by overlifting or overstraining or over-

exerting himself in handling weights, or other heavy bodies, though it be in the line of his employment, cannot hold the master liable for injuries which result from such overstraining, and this because he is a much better judge of his own strength, in fact, is the sole judge of his own strength. This, though the work is attempted under the direction of the master. The risk of injury of this character is assumed by the servants."

To the same effect are the holdings in *Williams* v. *Ky. River Power Co.*, 179 Ky. 577, 200 S. W. 946, 10 A. L. R. 1396; *Jarvis* v. *Erwin Cotton Mills Co.*, 194 N. C. 687, 140 S. E. 602; *Roberts* v. *Indianapolis Street Ry. Co.*, 158 Ind. 634, 64 N. E. 217.

In *International & Great Northern R. Co.* v. *Figures*, 40 Tex. Civ. App. 255, 89 S. W. 780, it was held that in undertaking "with the assistance of one man only to lift and load a bolster weighing over 500 pounds, the servant must be held to have assumed the risk of whatever danger there was in doing so on account of the weight of the piece; and the fact that the foreman testified that he knew it was dangerous and that one man had been hurt with it, is immaterial, the danger lay in the weight only and was necessarily perceivable by any man of ordinary understanding."

In *Slavens* v. *Northern Pacific R. Co.*, (C. C. A.) 97 Fed. 255, it is held: "Where section men on a railroad know that they constitute the usual force detailed for the performance of a particular duty, and during its performance they voluntarily expose themselves to a danger of which they should have known as much as any one, they are deemed to have assumed the risk insident to their situation, and cannot afterwards complain that there was not a sufficient force of men to do the work safely."

■ While it is true that it is generally a jury question whether an employee has assumed the risk incident to the employment, this principle is not applicable where the danger is open and obvious, and the employee has an equal opportunity with the master to become aware of the same. Whenever the latter condition is made to appear, then the question of assumed risk becomes a question of law for the court and not of fact for the jury.

There is no error in the judgment and it is affirmed.

*Affirmed.*