Raymond H. JOHNSON, Respondent,

v.

MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, a Corporation, Appellant.

No. 47580.

Supreme Court of Missouri,

Division No. 1.

March 14, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied April 11, 1960.

Frank J. Rogers, Kansas City, A. E. Elliott, Nevada, for appellant.

Everett Teel, Nevada, Sylvan Bruner, Pittsburg, Kan., A. C. Popham, Kansas City (Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel), for respondent.

HYDE, Presiding Judge.

Action for damages for personal injuries brought under the Federal Employers' Liability Act. 45 U.S.C.A. §§ 51–59. Verdict and judgment for plaintiff for $45,000 and defendant has appealed.

Defendant contends that plaintiff failed to make a jury case so we will state the facts shown by plaintiff's evidence and consider them from the viewpoint most favorable to him. Plaintiff was a member of a section crew in which there were usually three men with a foreman. One of the men was on vacation on the date of plaintiff's injury and he was working with H. M. Smithers; Fred Hamilton was the foreman. They were engaged in taking out old ties of the main line track and putting in new ones. In the afternoon, they needed two more ties so rode a motorcar to nearby Kimball, Kansas, to get them. The ties there were near a sidetrack and it was necessary to carry them 14 to 16 feet over a rough chat surface, with small holes in it, to put them on the handles of the motorcar, which had been left on the sidetrack. Ties were usually carried on a flat-bed push car that could be hauled behind a motorcar. When the push car was used, the ties could be taken to the side of the car and pushed onto it, from the side of the track, so that it was not necessary for the men carrying them to step over the rails. However, they did not have the push car on this occasion so it was necessary in placing the ties on the handles of the motorcar, which were across each end, for the men with the tie to step over the rails to get behind the motorcar and lay the ties on its handles; the man holding the front end of the tie had to step over both rails. Larger ties were used for cross ties under the 112-pound rails of the main track, than for sidetracks, and all these ties were of that type. There was conflicting evidence as to the weight of main line ties. Plaintiff and Smithers, and also his witness, T. W. Norman, testified that in carrying main line ties it was the usual custom and practice to use three men; and, if there were only two crewmen, the foreman would help. They said two men might move ties in the pile or carry a tie a step or two but not 10 or 12 feet. Norman also said he had seen ties used on the main line that weighed as much as 450 pounds.

The only direction the foreman gave them was to load two ties from the pile and he did not assist them but sat on the motorcar. Plaintiff and Smithers got one tie which they said was average size (which plaintiff estimated as weighing about 260 pounds) and put it on the handles of the motorcar. They then went back to the pile and, according to Smithers, got "the next one that was on top there," which they both said was much larger than the first one, estimating its weight at 300 pounds. Plaintiff said this tie was two or three inches thicker

and wider than the average tie, estimating its width and thickness as much as 14 inches by 10 inches. Plaintiff was walking backward, partly stooped over, holding the front end of the tie. Smeithers was following him walking forward holding the other end. The ties were eight feet long. Plaintiff's height was 6 feet, 1 inch, and he weighed 230 pounds; Smeithers was 5 feet 6 inches, and weighed about 170 pounds. Plaintiff stepped over the first rail, crossed the space between the rails and got to the second rail. Plaintiff described what then happened as follows: "When I stepped over this rail I had my left foot on the ground on the west side of the first rail. I had my right foot in the air ready to step over. Mr. Smeithers, my co-worker, was on the other end and he had his stomach against this tie and was pushing towards me and he shifted this weight by trying to get a better hand hold on this tie—* * * It just threw me in a twist. He was up against it and he was crowding the tie and pushing up against it and when he shifted this tie in trying to get his hands under it, why, it threw me forward and when he did get his hands under it he raised it back up and it jerked towards him and threw me in this twist and bind. * * * Well it all happened when I had one foot cocked over the rail, he pushed toward me and then when he got his hands under it he jerked it back. * * * I went down—I was still hanging onto the tie and I went down and I went to the rail and I put my hands right on it."

Smeithers said they were both carrying the tie stooped over because the tie was so heavy (he said they both talked about how heavy it was); that he was standing outside the first rail about a foot lower than plaintiff when plaintiff started to step over the second rail; that the tie was slick (it was creosoted) and heavy and he was losing his grip with his right hand so he "shifted to get a better hold * * * jiggled it around to get another hold," probably raised it two or three inches. Concerning plaintiff's position, he said: "He had one leg over the rail. He was standing on one leg;

and when I twisted the tie, it twisted him." He also said he was leaning into the tie in order to keep hold of it and was putting some thrust in the direction of plaintiff.

█ Defendant's reasons for contending that plaintiff did not make a jury case are: First, that plaintiff and Smeithers were not ordered to load the particular tie, claimed to be unusually large and heavy, but voluntarily selected it instead of one of standard size. Second: That there was no evidence that Smeithers had time or opportunity to warn that he was losing his hold on the tie before shifting his hold but that instead the evidence showed the contrary. Third: That plaintiff's theory that a change of handhold by the shorter man at one end of an eight-foot tie would "cause heavy, unusual and dangerous weight to suddenly and violently come down" on the taller man supporting the other end is not supported by the evidence and is unbelievable and contrary to physical facts.

As to the first, it is true that plaintiff said of the second tie "it had been laying on the ground in the chat, it had chat in it"; while Smeithers' testimony was that it was "the next one on top there" and "in the natural course of event" was "the next tie to be picked up." Smeithers also said, "We figured we would have to get it some time, so we just took it." They both said there were only six or eight ties in the pile and plaintiff's evidence did not explain how they were arranged in the pile, whether some on top of others or all on the ground (defendant's evidence indicated they were scattered on the ground); nor was there any evidence as to the size of the remaining ties. Furthermore, they both said they did not know what a standard tie weighed and had never seen one weighed. Plaintiff's estimate of the weight of a standard tie was 260 pounds so that his estimate of the weight of this larger one was not as great in difference as it would be from defendant's evidence as to the weight of a standard tie for 112-pound rails; and defendant's evidence also indicated there would be a variation of size and

weight of hewed oak ties such as plaintiff said this one was. Defendant cites Lutgen v. Missouri Pacific R. Co., Mo.App., 294 S.W. 444, 445, and Haviland v. Kansas City, P. & G. R. Co., 172 Mo. 106, 72 S.W. 515, 518, saying that an employee is the judge of his own strength and holding the employer not liable for injuries caused by overexertion. However, as plaintiff points out these cases were decided before the 1939 amendment to the Federal Employers' Liability Act abolishing the defense of assumption of risk. (45 U.S.C.A. § 54; for a recent overexertion case, see Stone v. New York, C. & St. L. R. Co., 344 U.S. 407, 73 S.Ct. 358, 97 L.Ed. 441.) As also pointed out by plaintiff, all of the ties were put there by defendant to be used; and the evidence did not show that the men were expected to choose the ties to be used or had the right to refuse to load any of the ties defendant had furnished for use on its main line track. Defendant also says it is not liable for any injury resulting from plaintiff's choice of an improper and hazardous method of performing a task when a safe method was equally available, citing Wadiak v. Illinois Central R. Co., 7 Cir., 208 F.2d 925; Hunter v. Busy Bee Candy Co., 307 Mo. 656, 271 S.W. 800; Lloyd v. Norfolk & W. R. Co., 151 Va. 409, 145 S.E. 372; Norfolk & P. Belt Line R. Co. v. White, 143 Va. 875, 129 S.E. 339; Louisville & N. R. Co. v. Green, 255 Ala. 642, 53 So. 2d 358. However, the rule of these cases is not involved and they are not in point in this situation because plaintiff and Smeithers were using the method intended, and which the foreman directed, namely, picking up the ties, carrying them to the motorcar and placing them on its handles. So far as appears from the evidence, this method applied to all of the ties in the pile. Certainly both ties were moved by the same method. It cannot reasonably be contended that plaintiff selected the method of work to be used.

As to defendant's contention that liability cannot be based on Smeithers' failure to warn, because he did not have time to do so, we consider this to be a jury issue. Plaintiff and Smeithers disagreed on whether there was a practice with respect to giving a warning when a man was about to shift or change his hold on a tie. Plaintiff said that there was such a practice "so that the man would know that the weight was going to be shifted and give him a chance to get into a position where it could be shifted and it wouldn't injure him." Smeithers said: "When I know I am going to drop one end, I will shout a warning"; but that in changing handhold this was "not the custom and practice, and besides would have no time, for when losing hand hold have to act right now." Smeithers testified by deposition (taken by defendant) which was offered by plaintiff. However, plaintiff was not conclusively bound by Smeithers' testimony contrary to his own but any such conflict was for the jury. Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 50, and cases cited; Kiger v. Terminal R. Ass'n of St. Louis, Mo., Mo.Sup., 311 S.W.2d 5, 12; Myers v. Karchmer, Mo.Sup., 313 S.W.2d 697, 702.) Moreover, the exercise of ordinary care under the circumstances might well impose a duty to give a warning, if there was time to do so, if Smeithers knew or in the exercise of ordinary care should have known that a change of handhold would cause a violent movement of the tie at a time when plaintiff was balanced on one foot to step over the rail.

We are inclined to agree with defendant's contention of impossibility of plaintiff's submitted hypothesis that, from the change of handhold and shift of the tie described, "additional, heavy and unusual and dangerous weight, suddenly and violently descended upon and came down onto plaintiff," because plaintiff testified that, in making the change, Smeithers let the tie down "around three inches" and raised it again "when he got both hands under it secure and came forward." Smeithers said he raised it two or three inches to get a better hold. Therefore, it does not seem possible that the hypothesized submission

could be true. However, possible or not, this was not what the evidence showed actually occurred. As shown by plaintiff's testimony hereinabove set out, it was Smeithers' action in pushing the tie against plaintiff, jiggling it around and then jerking it back that threw plaintiff off balance and into a twist and caused him to fall to the rail on his hands. In other words, there was a shifting of position of plaintiff's end of the tie and a thrust of the tie against plaintiff, and not an increase of weight descending at plaintiff's end, that plaintiff's evidence showed was the cause of his injury. Our conclusion is that the jury reasonably could find that a warning could and should have been given by Smeithers before he undertook to change his handhold and that failure to do so was negligence.

We also hold the evidence was sufficient to warrant a submission of negligence in doing this work with an insufficient number of workmen. "In the case of employments requiring numbers of workers to act in concert, it is the duty of the employer to provide a sufficient force to enable his employees to accomplish the work assigned to them with reasonable safety to themselves; and, if an injury results to an employee by reason of insufficiency in the number of his co-workers, he is entitled to maintain an action against the employer." (35 Am.Jur. 626, Sec. 197; see also 56 C.J.S. Master and Servant §§ 307–310, pp. 1069–1071; 57 C.J.S. Master and Servant § 515, p. 104; Meily v. St. Louis & S. F. R. Co., 215 Mo. 567, 114 S.W. 1013; Hulsey v. Tower Grove Quarry & Construction Co., 326 Mo. 194, 30 S.W.2d 1018; Macklin v. Fogel Construction Co., 326 Mo. 38, 31 S.W.2d 14; Prince v. Kansas City Southern R. Co., 360 Mo. 580, 229 S.W.2d 568; Holmes v. Terminal R. Ass'n of St. Louis, 363 Mo. 1178, 257 S.W.2d 922; Stone v. New York, C. & St. L. R. Co., 344 U.S. 407, 73 S.Ct. 358, 97 L.Ed. 441; Kansas City Stockyards Co. of Maine v. Anderson, 8 Cir., 199 F.2d 91, 36 A.L.R.2d 1, and annotation 36 A.L.R.2d

8, 117–121, and Missouri cases cited.) As noted, plaintiff had evidence that it was the usual custom and practice to use three men to carry and load main line ties for such distance as was required in this case. Plaintiff also had evidence that more than two men were required because the tie being carried when plaintiff was injured was larger and heavier than the average main line tie. We, therefore, hold that plaintiff made a jury case and that defendant's request for a directed verdict was properly overruled.

■ However, we agree with defendant's contentions that Instruction 1, given at request of plaintiff authorizing his recovery, is prejudicially erroneous because it does not properly submit the issues upon which plaintiff was entitled to go to the jury. This instruction, after hypothesizing matters concerning the applicability of the Federal Act, continued as follows: "[A]nd that in said work at said time and place referred to in evidence defendant was attempting to move the tie referred to in evidence and get it on a motor car on its tracks, and that its foreman over him, if so, Hamilton, then and there required and ordered plaintiff and his co-worker Smeithers to alone and without any other assistance handle and lift and carry and so load same, if you so find, and if you further find from the evidence that by furnishing and using only two men to lift and carry and handle said tie, said task and orders so given plaintiff, if so, was dangerous to plaintiff and could not be performed with reasonable safety to plaintiff, if so, and that more than two men were usual and necessary for so lifting and carrying and handling said tie for the reasonable safety of the plaintiff, if so, and if you further find from the evidence that defendant and said foreman negligently, if so, failed to assign and use a reasonably sufficient number of employees to lift and carry said tie, and if you further find from the evidence that in so performing said task plaintiff was required to lift and carry a weight that was dangerous to him and that it was especially and addition-

ally dangerous to him if each lifter did not coordinate his lifting and carrying movements with the other and give timely warning of any intention to shift said tie or change holds thereon, if you so find, and if you further find from the evidence that while plaintiff was so lifting and helping carry said tie and obeying said orders, if so, said employee Smeithers, and acting under all the aforesubmitted circumstances, failed to use ordinary care to coordinate his movements and actions with those of plaintiff and suddenly and without warning and negligently, if so, undertook to change his hold and shift said tie and in so doing additional and heavy and unusual and dangerous weight, if so, suddenly and violently descended upon and came down onto plaintiff and that plaintiff was thereby injured, if you so find, and if you further find from the evidence that by and through said foreman and said employee Smeithers defendant was negligent in the respects hereinabove submitted and that the aforesubmitted negligence of defendant as a whole or in part directly caused and directly contributed to cause plaintiff's said alleged injuries, if you so find, then your verdict must be for plaintiff   *   *   *."

■ Plaintiff's evidence would have warranted the submission of either the theory that it was the usual custom and practice to use three men for carrying and loading all main line ties and that using less was not a reasonably safe method of work; or the theory that defendant through its foreman knew or in the exercise of ordinary care should have known that the second tie to be loaded was an unusually large and heavy tie and for that reason required more than two men for reasonable safety in loading it. Instruction 1 did not actually submit either theory. It did not submit at all the theory of custom, practice and necessity of using three men as essential to reasonable safety in loading all main line ties because all its references are to the particular tie then being loaded. It did not really submit the theory that the particular tie being loaded required three men for reasonable safety in loading it because it did not require a finding that this tie was any larger or heavier than the standard main line tie. This was a strongly contested issue, defendant's evidence (foreman Hamilton) being that none of the ties used on the day of plaintiff's injury were of the size estimated by plaintiff (14 inches wide, 10 inches thick); that he had never seen a tie of that size used on the right of way; that all the ties used on that occasion were 7 inches by 9 inches, weighing from 170, 180, up to 200 pounds, and were sawed gum ties, not hewed oak; and that the usual custom and practice of handling main line ties was to use two men, a man at each end of the tie. Defendant also had evidence of roadmasters and foremen of other railroads (also several more of its own) that the custom of practice of moving main line ties for distances of about 15 feet always was to use only two men; that the standard size main line tie was 7 by 9 inches; and that none of them had ever seen a tie of the size described by plaintiff. Furthermore, not only did Instruction 1 fail to require any finding as to the size and weight of the tie but instead it hypothesized only "attempting to move the tie referred to in evidence." Of course, that language meant the tie plaintiff was carrying when injured but it ignored the issue presented by the evidence as to what size tie was being carried. Thus this instruction completely disregarded the direct conflict in the evidence of the parties and gave the jury no guide whatever as to what size tie was to be considered. This is contrary to the principles stated in Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500, cited by plaintiff, in which we said: "Where the evidence presents two or more divergent sets of essential facts, under one or more of which plaintiff would be entitled to recover and under one or more of which he would not, then a verdict-directing instruction or instructions given in his behalf should hypothesize, either by recital or by reference to other instructions, the facts essential in law to support the verdict." See also Yates

v. Manchester, 358 Mo. 894, 217 S.W.2d 541, and the explanation of it in the concurring opinion in the Hooper case, 260 S. W.2d loc. cit. 502, and in Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 978. Plaintiff says that defendant's sole cause instruction "G" contained the language "tie referred to in the evidence," and in "J" stated "a tie such as the one mentioned in evidence" claiming this cures his indefinite submission concerning the tie, citing Ferguson v. Betterton, 364 Mo. 997, 270 S.W.2d 756, 761. These were in effect converse instructions as to certain elements of Instruction 1, not on any issue concerning the size of the tie being carried, which plaintiff never submitted. While the use of indefinite language by plaintiff might be cured by defendant's use of the same language, such a reference to the tie that was being carried would not relieve plaintiff and the court of the duty to submit a correct theory of recovery. Since the real issue on insufficient help is whether directing the work to be done with the number of men used is a reasonably safe method of doing the work required to be done, Instruction 1 should have plainly submitted either the issue of the number of men necessary for reasonable safety in carrying all main line ties or the issue of the number so needed for loading such an unusual tie as plaintiff described.

■ Defendant also criticises Instruction 1 as requiring a finding of danger only to plaintiff from using only two men, pointing out its evidence that plaintiff had a sore back for several days before he came to work on the day of his claimed injury (not known by defendant until after the ties were loaded) and also that he had injured his back in an accident while in the Air Force during the war. Of course, the duty of an employer is to furnish a sufficient number of men to do the work with reasonable safety to all those engaged in its accomplishment (56 C.J.S. Master and Servant § 308, p. 1070; and while we do not say this alone would be prejudicial error, because the jury might understand that a method not reasonably safe for all engaged in the work was meant, in view of defendant's evidence it should be stated more accurately. Defendant further criticises this instruction saying its submission of Smeithers' failure to warn only required a finding that Smeithers "undertook to change his hold and shift the tie" without warning, when there was evidence that there was not time to warn (including Smeithers' own statement) because Smeithers' hand slipped too suddenly. Of course, plaintiff could properly have submitted on the issue of insufficient help alone without submitting failure to warn. (See Raymond, Missouri Instructions, 7391–7394.) However, if plaintiff intended to rely on failure to warn, a finding should have been required that in the exercise of ordinary care Smeithers could have given plaintiff a timely warning before moving the tie as he did. See Neth v. Delano, 184 Mo.App. 652, 171 S.W. 1; see also Koukouris v. Union Pac. R. Co., 193 Mo.App. 495, 186 S.W. 545. Likewise, if plaintiff intended to rely on a custom to warn, this should have been submitted since defendant's evidence was that there was no such custom. As we have already said, in considering whether plaintiff made a jury case, the evidence does not support the submitted finding that because of Smeithers' movements "additional and heavy and unusual and dangerous weight * * *. suddenly and violently descended upon and came down onto plaintiff."

Since this case must be retried, we consider defendant's further contention that plaintiff's statement, that the weight of the tie was shifted by Smeithers' movements, was a conclusion and that the court erred in not striking it. This is without merit because it was a fact that whatever weight plaintiff was holding was shifted to a different position when Smeithers caused that end of the tie to be moved.

The judgment is reversed and the cause remanded.

All concur.