## STONE *v.* NEW YORK, CHICAGO & ST. LOUIS RAILROAD CO.

No. 320.   Argued January 14, 1953.—Decided February 2, 1953.

*Tyree C. Derrick* argued the cause for petitioner. With him on the brief was *Karl E. Holderle, Jr.*

*Lon Hocker* argued the cause and filed a brief for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner was a member of one of respondent's section crews and while in the course of his employment severely injured his back.   He brought this action for damages in the Missouri courts under the Federal Employers' Liability Act, 35 Stat. 65, 36 Stat. 291, 53 Stat. 1404, 45 U. S. C. § 51 *et seq.*·  There was a jury trial and a verdict for petitioner.   The Missouri Supreme Court reversed, holding that plaintiff had not made out a sub-

missible case either as to negligence or as to causation. 249 S. W. 2d 442. The case is here on certiorari. 344 U. S. 863.

At the time of the injury petitioner was removing old or worn track ties. The rails would be jacked up, the spikes that held the rails pulled, the plates removed, and the tie pulled. The ties were usually pulled with tongs by two men. If there were any old spikes protruding downward from the tie into the ground, three or four men would usually be required to pull the tie.

There were three *other* ways to remove a stubborn tie. One was to dig a trench beside the tie and then roll the tie into the trench. Another method was to jack the rail up high enough so the tie would come free. The objection to that method was that the ballast would run under the other ties and produce a hump in the track. Another way was to free the rail from the ties a half-rail length on each side of the tie to be removed and then to jack the rail up, freeing the tie sufficiently so that it could easily be moved. This method had disadvantages on a track as active as this one in that it meant putting up a flag and stopping trains.

This day Stoughton, the straw boss, used only the first method. Petitioner and one Fish together were unable to remove a tie because, as it turned out, a spike was driven through it into the ground. Stoughton told petitioner he was not pulling hard enough. Stoughton put a bar under the far end of the tie while petitioner and Fish pulled again. Still the tie would not come. Stoughton told petitioner to pull harder. Petitioner said he was pulling as hard as he could. Stoughton then said, "If you can't pull any harder I will get somebody that will." So petitioner, with Fish, gave a hard pull and hurt his back. The tie was finally pulled by four men— two pulling, one prying with a crowbar, one hammering

with a maul; and it turned out that the tie had a spike driven through it and extending into the ground.

We think the case was peculiarly one for the jury. The standard of liability is negligence. The question is what a reasonable and prudent person would have done under the circumstances. *Wilkerson* v. *McCarthy,* 336 U. S. 53, 61. The straw boss had additional men to put on the tongs. He also had three alternative methods for removing stubborn ties. This was not the first difficult tie encountered by the section crew in this stretch of track. The likelihood of injury to men pulling or lifting beyond their capacity is obvious. Whether the straw boss in light of the risks should have used another or different method to remove the tie or failing to do so was culpable is the issue. To us it appears to be a debatable issue on which fair-minded men would differ. Cf. *Bailey* v. *Central Vermont R. Co.,* 319 U. S. 350, 353; *Urie* v. *Thompson,* 337 U. S. 163, 178. The experience with stubborn ties, the alternative ways of removing them, the warning by petitioner that he had been pulling as hard as he could, the command of his superior to pull harder, the fact that more than two men were usually used in these circumstances—all these facts comprise the situation to be appraised in determining whether respondent was negligent. Those circumstances were for the trier of facts to appraise. Cf. *Blair* v. *B. & O. R. Co.,* 323 U. S. 600, 604. The fact that the employee, commanded to do the act that caused the injury, first protested does not place the risk of injury on him. *Id.,* p. 605. We think there was evidence of a causal connection between the order of Stoughton to pull harder and petitioner's back injury. The fact that fair-minded men might likewise reach different conclusions on this branch of the case emphasizes the appropriateness of also leaving it to the jury. *Ellis* v. *Union Pacific R. Co.,* 329

U. S. 649, 653; *Coray* v. *Southern Pacific Co.*, 335 U. S. 520, 523; *Carter* v. *Atlanta & St. A. B. R. Co.*, 338 U. S. 430, 433.

*Reversed.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE REED and MR. JUSTICE JACKSON join, dissenting.

The Federal Employers' Liability Act embodies the common law conception of negligence, subject to certain qualifications. Thereby it has established national standards as the basis of liability by carriers for injuries or death to railroad employees in the course of their occupation. It authorized this liability to be enforced in the courts of the several States as well as in the Federal District Courts. Since this is a federal statute, the State courts must conform to these national standards. Thus, the substantive limitations upon common law negligence actions, as for instance those pertaining to assumption of risk and waivers, must be heeded by the State courts no matter what the local law of negligence may be.

However, the central components of liability for negligence—that it rests upon fault and that appropriate causality must be established between the negligent circumstances and the complained-of injury—are the same for actions under the Federal Employers' Act as for any other negligence actions. For reasons that I for one have long deplored, Congress has seen fit to make such a concept of negligence the basis of compensation for inevitably untoward incidents.

I deplore this basis of liability because of the injustices and crudities inherent in applying the common law concepts of negligence to railroading. To fit the hazards of railroad employment into the requirements of a negligence action is to employ a wholly inappropriate procedure—a procedure adequate to the simple situations for which it

was adapted but brutally unfit for the situations to which the Federal Employers' Liability Act requires that it be put. The result is a matter of common knowledge. Under the guise of suits for negligence, the distortions of the Act's application have turned it more and more into a workmen's compensation act, but with all the hazards and social undesirabilities of suits for negligence because of the high stakes by way of occasional heavy damages, realized all too often after years of unedifying litigation.

The central difficulty in utilizing the concept of negligence for these railroad injuries is the vast range of discretion that issues of fault and of causality inevitably leave to judges in determining what conscientious judges must decide, namely, whether the facts warrant a finding of fault and causality; in other words, first, the trial judge's ruling whether there was enough to go to the jury, and, secondly, the duty of appellate judges in deciding whether the trial court could have found that there was enough evidence on those two basic issues to have the case go to the jury and enough, therefore, to sustain a verdict for the plaintiff. That equally honest and equally experienced judges, equally compassionate toward the injured employee or his bereaved family, may disagree on these questions, no fair-minded judge, it would seem, can deny. These questions of assessing facts are of a very different order of issues for courts from rulings regarding the applicable standards for a jury's guidance.

Uniformity of direction in fitting the myriad diversity of circumstances to the applicable standards is essential. It is a duty which ultimately belongs to this Court and one which it is fitted to discharge. To assess the unique circumstances of a case is quite a different matter. And for the decisive reason that right and wrong are not objectively ascertainable, that in fact there is no right and wrong when two equally competent and equally inde-

pendent judges, equally devoid of any bias or possessed of the same bias, could by the same reasoning process reach opposite conclusions on the facts.

This is such a case. For the issue is not whether I think that the trial court was right in allowing this case to go to the jury. Congress has seen fit to allow this action to be brought in the State courts and to forbid removal of a case to the federal court even when diversity of citizenship exists. (These cases in the State courts run into the thousands.) In thus entrusting the enforcement of the Federal Employers' Liability Act to the State courts it presupposed, as a generality, the competence of the judiciaries of the States, their professional capacity to enforce the Act and their self-critical fairness toward its purposes. When it thus put the enforcement of the law in the keeping of State courts, the Congress knew that the determination of whether there is adequate evidence to sustain a claim of negligence is one of the most elusive determinations that judges are called upon to make. To suggest that the Congress knew this, and has known it right along, is not to indulge in a fiction. Congress is composed predominantly of lawyers and this aspect of the law of negligence is known by the merest tyro. Congress could hardly have assumed when the Federal Employers' Liability Act of 1908 was enacted that this Court must reverse the State judges merely because we and they differed, where difference was more than permissible, was inevitable, concerning whether or not a particular unique set of facts made out a case of negligence.

Congress very early gave emphatic proof that this was not the Court to sit in judgment upon the State courts every time a majority of this Court might view the evidence differently than the State court. In 1916 the Congress explicitly withdrew Federal Employers' Liability cases from the Court's mandatory jurisdiction

and left them to be reviewed only when a determination by a State court involved a federal question of substance. 39 Stat. 726, 727.

And so I dissent here because, while I am clear that equally understanding and fair-minded judges could have held that the facts of this case were for the jury, I am no less clear that I cannot say that the Missouri Supreme Court could not, as it did, hold that the plaintiff "did not make a submissible case under the Act either as to negligence or as to causation." 249 S. W. 2d 442, 449. The question before us is whether the judgment of the Missouri Supreme Court should be reversed. I cannot say it should be once I conclude that the Missouri court was entitled to the view it took and that I am not to substitute myself for that court in viewing the facts, although had I the independent primary responsibility of judgment I would take the other view.