**WADIAK**

v.

**ILLINOIS CENT. R. CO.**

No. 10884.

United States Court of Appeals
Seventh Circuit.

Dec. 22, 1953.

Herbert J. Deany, Charles I. Hopkins, Jr., Robert S. Kirby, Chicago, Ill., J. H. Wright, Chicago, Ill., of counsel for appellant.

Thomas C. Hollywood, Lloyd T. Bailey, Edward Wolfe, Chicago, for appellee.

Before FINNEGAN and LINDLEY, Circuit Judges, and PLATT, District Judge.

LINDLEY, Circuit Judge.

Plaintiff sued to recover damages for personal injuries incurred in the course of his employment by defendant. His complaint was grounded on Section 1 of the Federal Employers' Liability Act, 45 U.S.C.A. § 51, charging that his injuries proximately resulted from the negligence of defendant. The case was submitted to a jury who found for plaintiff on four specific charges of negligence. Defendant appeals from the judgment entered on the verdict, assigning error in the instructions, rulings on evidence and the denial of its motion for a directed verdict.

The facts most favorable to plaintiff's cause follow. On February 15, 1951, plaintiff had been, for a period of some twenty-five years, in the employ of defendant as a car repairman, and on that day, was working under the supervision of "gang boss," Eddie Bonny, at defendant's yards in Chicago with William Granton, with whom he had teamed for some four months previously. The two were assigned to the cars on repair track number 1, including "Reading" number 19499, which they reached about 10 A.M. They inspected the car and found that its east door had been forced open some twenty inches or more. They then reported to their foreman, and, as required by regulation, sought and received his permission to break the seals and enter the car. They found it loaded with barrels, some six of which had fallen and shifted, so as to force the door outward. After looking over the situation, they went to a nearby storeroom and there procured a chain hoist, jack and block. Hanging the pulley of the hoist on the east door post, they proceeded to lift five of the barrels and store them properly in the cargo. When these barrels had been removed, the door closed, resuming its normal position, so that there was no longer a place on which to hook

the chain hoist without reopening the door. At Granton's suggestion, they lifted the sixth barrel by hand and placed it on top of the load, about thirty inches above the floor of the car. In doing so, plaintiff injured his back. He testified that he suggested that the barrel was too heavy, but that the two of them handled it by hand because "Jim tell me, 'Lift 'em barrel.'" No additional help was sought; no additional equipment was requested or obtained, despite the fact that other apparatus was close at hand Plaintiff testified that they proceeded without seeking help in order to "save time," as it was "hard to get" another man. He told Granton he had hurt his back, but continued to work for the remainder of that day and the following day. He reported his injury to Bonny on the following Monday, and was taken immediately to the Illinois Central Employees Hospital for check-up and treatment. After his injury he was unable to resume his work and was retired on pension.

The car had been loaded at Vancouver, B. C., on January 31, 1951, with a cargo destined for Kingston, Jamaica. It moved over the Canadian Pacific and the Soo Line to Chicago and was received by defendant on February 14, to be forwarded to the port at New Orleans. The waybill disclosed that the contents were barrel staves and hoops shipped by Sweeney Cooperage, Ltd. Both plaintiff and Granton testified that they did not see what was in the containers, and thus did not know, as a fact, what was in them. Plaintiff testified, over objection, that the sixth barrel weighed about 300 pounds. For our purposes, this statement may be accepted as a fact, without comment on the propriety of its admission as opinion testimony. Both Wadiak and Granton testified that the load shifted when the car was "humped," but neither was present at the time of this operation, and neither offered any basis for his surmise. Both saw the car for the first time when they approached it on the repair track on the morning of February 15.

On this record the case was submitted to the jury on the following charge by the court: "* * * the plaintiff * * alleges that he was injured and sustained damages due to the negligence of the defendant and charges that the defendant was guilty of one or more of the following acts of negligence (a) in failing to furnish plaintiff with derrick, rope and pulley or other equipment with which to pile and handle the barrels in question, (b) in failing to load said car in such manner that the barrels therein would not move, shift, strike and break open the car door, (c) in accepting and putting in its train said car when the contents thereof were not properly loaded, (d) in handling the said car in such rough manner to cause the contents thereof to move, shift, strike and break open the car door. * * * These are the issues you are to determine from the evidence under the instructions of the court."

■ In view of our conclusions, the only issue which we shall consider is whether the court below erred in denying defendant's motion for a directed verdict, i. e., whether the evidence, construed most favorably to plaintiff, was sufficient to require submission to the jury on any of the four charges. We approach this question with the guide furnished by the Supreme Court in Brady v. Southern R. Co., 320 U.S. 476, 479–480, 64 S.Ct. 232, 234, 88 L.Ed. 239, in mind: "The weight of the evidence under the Employers' Liability Act must be more than a scintilla before the case may properly be left to the discretion of * * the jury. (Citations omitted.) When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict. By such direction of the trial the result is saved from the mischance of speculation over legally unfounded claims. * * *" See

also, Moore v. Chesapeake & O. Ry. Co., 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547; Eckenrode v. Pennsylvania R. Co., 3 Cir., 164 F.2d 996, affirmed 335 U.S. 329, 69 S.Ct. 91, 93 L.Ed. 41; Creamer v. Ogden Union Ry. & Depot Co., Utah, 242 P.2d 575. Applying this test to the case at bar, the trial court erred in refusing to direct a verdict in defendant's favor. Plaintiff's whole case consisted of his own testimony and certain X-rays introduced in evidence. Accepting his testimony as true, there is not even a scintilla of evidence to support any of the specified charges of negligence. Apparently plaintiff has abandoned the charge of negligence in loading the car and in accepting the car for transport improperly loaded. And well he might, for the record is wholly silent as to who loaded the car, whether it was negligently loaded or as to the condition of its contents when it was delivered to defendant. There was no evidence whatever to submit to the jury on either of these charges of negligence.

We conclude further that the evidence was insufficient to require submission of the charge of negligently handling the car. The surmise of plaintiff and of Granton that it had been damaged during humping operations is the only evidence to support this charge. As previously observed, this was pure speculation on their part. Nothing in the testimony indicates that defendant was responsible for the condition of the car, or, if so, that the damage grew out of negligent handling by its employees. The only fact relating to this issue is that the load shifted. The jury should not have been permitted to speculate as to when and how or by what agency this occurred.

■ The trial court seemed to think that negligence on the part of defendant might be inferred from the fact of the load shifting, unless that was shown to be "an act of God." To our minds this was fallacious. If the doctrine of *res ipsa loquitur* is ever applicable to litigation arising under the Act, it certainly can not be applied in this case, where the negligence, if any, may be chargeable to the loader or to any of the other carriers who handled the car.

The same conclusion must result with respect to the charges of negligence in failing to provide adequate equipment. The undisputed evidence is that the chain hoist was sufficient to move the barrels, but that it was not used on the sixth barrel because, when the door closed, there was no place to hang the pulley. But there is no showing that if the door were reopened the pulley could not have been utilized as before. Furthermore, plaintiff testified that adequate equipment was available, had he seen fit to use it. His own words were, "We got everything down there * *."

In disposing of this question we should, perhaps, mention the original testimony of plaintiff that the foreman, Bonny, knew that they were moving this barrel without using the hoist. This statement, however, he contradicted more than once by other statements that the foreman was never at or in the car. His later testimony is entirely consistent only with the undisputed evidence that a repair crew is assigned to a certain group of cars by the foreman and thereafter left to decide for themselves how best to make their repairs and that the foreman is seldom consulted. The only permissible inference is that adequate equipment with which to do the work safely was available and that the workmen themselves made the decision to do the lifting by hand,—not any supervisory agent of defendant.

■ Nor did plaintiff's testimony include any proof that assistance could not have been had if it was determined advisable to move the barrel by hand. He testified variously, "that other men were hard to get," that other workmen "were busy" and that he and Granton did not seek other aid because they wanted "to save time." The undisputed testimony is that on other occasions when they needed help, one of them would ask a member of another crew to give them a

hand and that it was not necessary to consult the foreman. In the absence of proof that such aid was sought and was denied to him or that any need for help was brought to defendant's notice, plaintiff can not rely on this contention. Louisville & N. R. Co. v. Green, 255 Ala. 642, 53 So.2d 358.

Plaintiff says, however, that he considered Granton his boss, and, therefore, that Granton was a vice-principal. He insists that Granton ordered him to move the barrel and that his back was injured while carrying out this order. This argument is based on his testimony as follows:

"Q. As between you and Granton who was the boss? A. Well, Jim asked me you know to lift the barrel. I lift it.

"Q. Did you tell Jim what to do? A. No. I no tell Jim—

"Q. Did Jim tell you what to do? A. Jim tell me, 'Lift 'em barrel.'

"Q. So you did what Jim told you? A. Yes."

On cross-examination plaintiff testified that Granton was a fellow car repairman who received the same wage as did he; that he (plaintiff) had been a car man for defendant for twenty-five years; and that he knew nothing about Granton's seniority. Granton, in fact, had approximately eight years seniority as a car repairman for defendant when this accident occurred. Therefore, as between the two, plaintiff had the higher seniority.

Two inferences may be drawn from this testimony, neither of which aids plaintiff's cause. Thus there may have been a conversation between the two with respect to the best method of removing the barrel, or Granton may have suggested to plaintiff that they lift it. Despite ample opportunity to do so, plaintiff did not testify that Granton had authority to give him orders, that he was obligated to obey orders from Granton, or, even that he considered Granton his superior and himself obliged to obey Granton's order.

■■ Even if we construe this testimony as proof that on this occasion Granton presumed to act as plaintiff's "boss," absent proof of actual authority, express or implied, a fellow servant does not merely by the assumption of authority become a vice principal. 56 C. J.S., Master and Servant, page 1099, § 332. The facts here closely parallel those before the court in Holliday v. Fulton Band Mill Co., 5 Cir., 142 F.2d 1006, and the reasoning of that case is applicable. As there, the evidence is that defendant was represented in the yards by the foreman under whose direction both plaintiff and his partner worked as one of several crews of repairmen; that neither had authority, either express or implied, to represent the master as a vice principal, but that they were in fact fellow servants, and that, as between the two, plaintiff was the ranking man in seniority. Plaintiff can find no comfort in this respect in Stone v. New York, C. & St. L. R. Co., 344 U.S. 407, 73 S.Ct. 358, 97 L.Ed. 441, where the person who ordered plaintiff "to pull harder" was his superior, in charge of a section gang of which plaintiff was part. Furthermore, in that case there was substantial evidence of negligence in defendant's failure to furnish adequate man power and in the manner in which the "straw boss" ordered the work done.

Plaintiff's contention that defendant was negligent in failing to afford him a safe place to work was abandoned before the case went to the jury and is not now before us. Assuming, *arguendo*, however, that this question is presented, there is no evidence to the effect that the conditions in the car were inherently dangerous, or that any danger present was not readily apparent to a car repairman of reasonable prudence.

■ After careful examination of the record, it seems clear to us that there is not the slightest bit of evidence that defendant was negligent in any of the

**930**

respects charged. Moreover, if for the purposes of this decision, we indulge the presumption that there is evidence of negligence on the part of defendant, there is not an iota of proof that it was the proximate cause of plaintiff's injuries. He was not injured because he did not have equipment, for he had access to sufficient and adequate tools and devices. He was injured because he saw fit not to use the equipment but to ignore it and to handle the barrel manually. He was not injured because he needed help and did not have it but because he saw fit not to ask for help. He was not injured because the car had been improperly loaded and carried by defendant in such condition, but, because, when he was directed to repair the condition, without approaching his superior, he voluntarily adopted a dangerous method of doing so instead of a safe one. He was at the car solely because it needed repairs; indeed it was his duty to make those repairs. How the damage which he was to rectify had come about and who had caused it was wholly immaterial. He faced a fact; the car was damaged; it was his duty to repair; he and his partner had the choice of methods; nothing was done by defendant causing the injury incurred in his voluntary choice of how best to do his duty. The law imposes no liability under such circumstances. Wolfe v. Henwood, 8 Cir., 162 F.2d 998; McGivern v. Northern Pac. R. Co., 8 Cir., 132 F.2d 213; Gill v. Pennsylvania R. Co., 3 Cir., 201 F.2d 718; Deere v. Southern Pac. Co., 9 Cir., 123 F.2d 438; Reynolds v. Atlantic Coast Line R. Co., 5 Cir., 196 F.2d 643. On this record, indulging every permissible presumption in plaintiff's favor, there was insufficient evidence to take the case to the jury on any of the charges of negligence.

In view of our conclusion in this respect, it is unnecessary to consider other assignments of error. The judgment is reversed with directions to the trial court to enter judgment for defendant.