KATHERINE SHELLHAMMER, GENERAL ADMINISTRA-
TRIX OF THE ESTATE OF WALTER R. SHELLHAMMER,
DECEASED, PLAINTIFF-APPELLANT, v. LEHIGH VAL-
LEY RAILROAD COMPANY, DEFENDANT-RESPONDENT.

Argued November 30, 1953—Decided January 25, 1954.

*Mr. Louis J. Greenberg* argued the cause for the appellant (*Mr. Samuel M. Cole*, attorney).

*Mr. Charles W. Broadhurst* argued the cause for the respondent (*Messrs. Emory, Langan & Lamb*, attorneys).

The opinion of the court was delivered by

HEHER, J. On January 13, 1951 the deceased Walter R. Shellhammer suffered fatal injuries while pursuing his employment in interstate commerce with the defendant railroad; and, asserting actionable negligence under the Federal Employers' Liability Act, 35 *Stat.* 65, 36 *Stat.* 291, 53 *Stat.* 1404, 45 *U. S. C.*, sec. 51 *et seq.*, recovery is sought in this proceeding for the pecuniary loss sustained by the widow and next of kin of the deceased.

There was a judgment of dismissal at the close of plaintiff's case, for want of proof of a negligent failure of duty as the proximate cause of the fatality; and the Appellate Division of the Superior Court affirmed the consequent judgment. We certified the cause for appeal on plaintiff's motion.

The deceased was a foreman of car inspectors and repairers. His particular assignment involved the assembling of three groups of freight cars into a single train, in the railroad's Jersey City freight yard, for movement to Oak Island, 11 miles away. The last of the cars were coupled, the air hose connected and the valves opened by two car inspectors under the deceased's immediate supervision, and the operating test was then made preliminary to setting the train in motion. The test was satisfactory and, after building up a reserve of air pressure, a matter of a very few minutes at the most, the engineman blew the engine whistle to indicate he was ready to move, whereupon the conductor gave the engineman the starting signal and the train was put into motion, the engineman the while ringing the engine bell, and the train moved out of the yard. Shortly thereafter, the decapitated body of Shellhammer was found between the rails of the track, the arms at shoulder level and the left hand gloved.

The contention is that the train was moved without adequate warning while Shellhammer was yet engaged in replacing a defective air hose lately discovered between two cars of the train. A length of air hose was found a short distance from the body, and it is theorized that after the two car inspectors "had concluded their work, given the all-clear signal and left, Shellhammer observed that a leak had sprung in the hose between the 23rd and 24th cars," and he "thereupon put on his work gloves, shut off the air supply, replaced the defective hose with a good one, threw the defective hose on the ground where it was subsequently found and just as he turned the angle cock to turn the air on, the train started and killed him." The ordinary presump-

tion of due care by the deceased for his own safety is invoked.

The question is whether there is evidence to sustain this hypothesis of negligence. Appellant's insistence is that defendant's employees knew, or in the exercise of reasonable care, should have known, that Shellhammer "was in the vicinity of the train," and that "a leak in an air hose or any defect, for that matter, might present itself at any moment," and "a conscientious employee like Shellhammer would take steps to remedy such a situation," and under the statute "the jury is the appropriate tribunal to determine the questions of reasonable care and proximate cause."

But, if there is to be a submission to the jury, there must of necessity be a sufficient showing of negligence, the evidence being accredited, to sustain the pleaded cause of action. Liability under the act arises from negligence causing injury, and not from the injury itself. The common-law concept of negligence is embodied in the federal statute. The question is what a reasonable and prudent person would have done under the circumstances, and where fair-minded men would differ on that, the issue goes to the trier of the facts. *Stone v. New York, C. & St. L. R. Co.*, 344 *U. S.* 407, 73 *S. Ct.* 358, 97 *L. Ed.* 441 (1953). And the injury must perforce be the natural and probable consequence of the negligence or wrongful act, such as ought to have been foreseen in the light of the attending circumstances. Events "too remote to require reasonable prevision need not be anticipated." *Brady v. Southern R. Co.*, 320 *U. S.* 476, 64 *S. Ct.* 232, 88 *L. Ed.* 239 (1943). The burden of proving negligence and proximate cause rests upon the plaintiff; "mere speculation" is not enough; the question is whether there are probative facts reasonably justifying the inference of fault and proximate cause, and when such is the case it is for the jury to determine whether that inference ought to be drawn. *Tennant v. Peoria & Pekin Union R. Co.*, 321 *U. S.* 29, 64 *S. Ct.* 409, 88 *L. Ed.* 520 (1944); *Moore v. Chesapeake & Ohio Railway Co.*, 340 *U. S.* 573, 71 *S. Ct.* 428, 95 *L. Ed.* 547 (1951). Since the right of action comes

by a federal statute, under the Supremacy Clause of the Federal Constitution, *Article* VI, the state courts must conform. The sufficiency of the evidence in this regard is a federal question reviewable by the Federal Supreme Court, to insure the authority of the act in the state courts. There must be more than a scintilla before a factual issue is raised for the jury. When the evidence is such that, without weighing the credibility of the witnesses, the absence of negligence is the only reasonable conclusion, there is no issue for the jury. *Brady v. Southern R. Co.,* cited *supra.*

■ Such is the rule in the judicial administration of New Jersey's negligence law, derived as it is from the common law. The scintilla rule does not obtain here. The question is whether the trier of the facts could, on any reasonable view of the evidence, rejecting all evidence and inferences unfavorable to the plaintiff, find that the plaintiff had established the facts essential to his asserted cause of action. Is there any evidence which, if accepted and given its fullest probative force, reasonably tends to sustain the pleaded cause of action? Mere surmise or conjecture is not enough. *Sivak v. New Brunswick,* 122 *N. J. L.* 197 (*E. & A.* 1939). This is the English common-law rule. Are there facts in evidence which if unanswered would justify men of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain? *Bridges v. The Directors, etc., of the North Linden Railway Co., L. R. 7 H. L.* 213.

■ So assessed, the evidence here does not make for a factual inquiry by the jury.

The coupling of the cars had been completed, the air-brake operating test had been made, and the train was ready to proceed. There was every reason to believe, when the moving signal was given, that the deceased and his car inspectors had finished their work and had departed from the scene. So far as appears, there was due circumspection in this regard. When the air-brake test proved satisfactory, one of deceased's inspectors, in his own presence, called out to the trainman nearby that "the train is all yours," mean-

ing, it is conceded, that it was in readiness to go, and the deceased then said, "Good night, I will see you next week."

There is no tangible evidential basis for the inference that the apparently discarded piece of air hose found nearby was connected with the deceased's operations. His work was supervisory, but conceding the possibility of a sudden emergency, the wrench which it is acknowledged was an indispensable tool in the replacement of an air hose was nowhere to be found, nor was there a lantern, the hour being 8:20 P. M. And the deceased did not conform to the established rule, for the worker's own protection, that when emergency repair work is to be done under such circumstances, a signal shall be given to the engineman and fireman. No such signal was given. In a word, there was no reason whatever to anticipate the deceased's presence in a place of danger when the train was put into operation; quite the contrary.

Indeed, in the final analysis, the specific ground of negligence asserted on the brief is that it is shown by "uncontradicted evidence" that "an interval of 15 to 20 minutes had elapsed between the all-clear signal, followed by the air-brake test, which took thirty seconds, and the actual starting of the train by Hann, the defendant's engineer"; that "no one was assigned to check up and take any steps to ascertain if a change of status had occurred during that 15 to 20 minute interval during which no check-up or investigation had been made to prove it was safe to start the train," "as to whether or not the decedent or any one else was working at or about the train or between the cars," and the "engineer started the train relying solely on an all-clear signal which had been given to him 15 to 20 minutes earlier."

. The court's preargument examination of the record revealed no ground whatever for the statement that between 15 to 20 minutes intervened between the giving of the all-clear signal and the movement of the train; and on the oral argument, when counsel was asked to point out the evidential justification for this factual assertion, he was unable to do so and

then agreed that it had no basis in the record. In ostensible support of this affirmation of fact, the brief cites evidence tending to show that there was an interval of 15 minutes from "the time of the last coupling" of cars "until the time the train moved out of the yard, started to move," a radically different thing. Thus, the basic factor in the charge of negligence made on the brief is not sustained by the proofs. The train went into timely motion in accordance with the only signal given; there was no interval calling for a renewal of the signal before the train was actually put into operation. A finding of culpable negligence in these circumstances would be purely conjectural and utterly devoid of the factual substance requisite for liability under the statute.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.