**Malikiah JACKSON**

v.

**ILLINOIS NORTHERN RAILWAY.**

**No. 11246.**

United States Court of Appeals
Seventh Circuit.

June 15, 1955.

Clifford D. O'Brien, Solomon Sachs, Chicago, Ill., for appellant, Lee Leibik, Walter N. Kaufman, Chicago, Ill., of counsel.

William J. O'Brien, Jr., Floyd J. Stuppi, Marshall E. LeSueur, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

Plaintiff, Jackson, a railroad hostler helper, suffered a right inguinal hernia, indirectly acquired, while performing his duties as an employee of defendant Railroad. He asks us to reverse a judgment entered below on defendant's motion for a directed verdict, and order a new trial on his action brought under the Federal Employer's Liability Act.[1]

Defendant moved for a directed verdict at the close of plaintiff's evidence, and the trial judge took it under advisement. That motion was renewed and again taken under advisement at the close of all the evidence. When the trial jury was unable to reach a verdict, they were discharged and defendant's motion for a directed verdict was granted and the court ordered judgment for defendant from which plaintiff appealed. No question, according to both sides, arises on the pleadings.

The record discloses the following undisputed facts:

Wet sand, delivered in gondola cars, was brought to defendant's sand house and shoveled through trap doors into that structure where plaintiff worked drying such sand. Incoming sand was thus dumped and stored in one end of that shed opposite to which was a window, electric light and coal stove sur-

---

1. 35 Stat. 65 as amended by 36 Stat. 291 and 53 Stat. 1404, 45 U.S.C.A. §§ 51–59.

rounded by a perforated steel screen. A wooden barrier about four feet high was located approximately 10 or 12 inches from the steel screen, forming a partition between, and dividing, wet from dry sand. Standing on the damp sand side, Jackson participated in the drying process by shoveling wet sand over the steel screen into the space between screen and stove. On the occurrence date that heating unit was producing heat from shortly after 4 P.M., November 21, 1951. When this sand dried it flowed through the screen and was removed by another worker. Defendant supplied Jackson with several shovels and a pick with which to perform his work. These tools were not defective in any way and were available to defendant at the time of his alleged injury.

In short, plaintiff alleges that because the trap doors were partially open due to heaps of sand and because rain during summer months fell into the sand house through large unrepaired holes in the roof, as did snow and sleet, quantities of sand were frozen into large masses. A foreman for the defendant Railroad, and called by that party as a witness, testified (T. R. 107) as follows:

"Q. Have you ever ordered Mr. Jackson to carry any frozen lumps of sand by hand?

"A. No sir, absolutely not."

On cross-examination of that witness this portion of his testimony is stressed by plaintiff:

"Q. Did you ever give Mr. Jackson any instructions of any kind about drying sand?

"A. No, sir."

Plaintiff picked up a lump of frozen sand which was part of a larger lump he had chopped off the heap of sand. When he started to reach over the barrier the frozen lump in his hands started crumbling, and he lurched forward and felt "a pain, a stinging kind of pain."

Jackson's theory of recovery rests upon paragraphs 6 and 7 of his complaint:

"6. The defendant disregarded its duty toward the plaintiff at the time and place set forth in one or more of the following ways:

"(a) The defendant was careless and negligent in the maintenance, supervision, control and management of the sandhouse facilities whereat the plaintiff was required to work, at the time and place set forth.

"(b) The defendant was careless and negligent in the maintenance, supervision, control and management of the sand supply with which the plaintiff was required to work, at the time and place set forth.

"(c) The defendant was careless and negligent in that it required the plaintiff in the course of his duties of supplying and sanding locomotives, to work with a supply of sand that was made up of frozen, large heavy formations which required him to make great exertions in lifting such objects in order to attempt to carry out the duties assigned to him by the defendant.

"7. As a direct and proximate cause of one or more of the foregoing acts of negligence, and in consequence thereof, the plaintiff while lifting a large and heavy formation of frozen sand at the sandhouse, had to exert great strength and thereby strained himself; and by reason of such he suffered a rupture of the abdomen, commonly called a hernia; and by reason of said injuries he suffered a loss of earnings and severe pain, torment and anguish, so that surgery became necessary in an effort to relieve the condition, causing further pain, suffering and anguish, although prior to the injuries, plaintiff was a strong, healthy and able-bodied man, capable and actually performing his regular work as a railroad hostler helper, all to the plaintiff's damage in the sum of Fifteen Thousand Dollars ($15,000.00), and therefore he brings this suit."

Plaintiff cites us to Wilkerson v. McCarthy, 1949, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497, where the Supreme Court reversed the Supreme Court of Utah's affirmance of a judgment resting upon a directed verdict in favor of a defendant railroad. But we would recall this lan-

**78**

guage from the McCarthy case, 336 U.S. 61–62, 69 S.Ct. 417:

"There are some who think that recent decisions of this Court which have required submission of negligence questions to a jury make, 'for all practical purposes, a railroad an insurer of its employees.' * * * [citing] * * * This assumption, that railroads are made insurers where the issue of negligence is left to the jury, is inadmissible."

Because Jackson failed to make additional little pieces from the big piece he chose to move manually, hardly provides the basis for imposing liability on defendant even under the Federal Employer's Liability Act.

Those principles announced, explained, and applied by Judge Lindley in Wadiak v. Illinois Central R, Co., 7 Cir., 1953, 208 F.2d 925, are applicable to Jackson's appeal and support the trial judge's allowance of defendant's motion. Consequently the judgment appealed is affirmed.

Affirmed.