**TEXAS & PACIFIC RAILWAY COM-PANY, Appellant,**

v.

**Ruby Nell THOMSON, Appellee.**

**No. 15743.**

United States Court of Appeals
Fifth Circuit.

April 25, 1956.

Rehearing Denied May 24, 1956.

J. B. Look, Jr., Abilene, Tex., Wagstaff, Harwell, Alvis & Pope, Abilene, Tex., of counsel, for appellant.

Beverly Tarpley, Abilene, Tex., Scarborough, Yates, Scarborough & Black, Abilene, Tex., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

This appeal involves the question whether, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., the evidence established any negligence proximately causing back injuries to a lady agent-operator sustained while she was performing her duties in handling mail from the truck to the railway mail car. Appellee Thomson sued appellant railway company, alleging that she was negligently injured December 3, 1952 while performing such duties at Monahans, Texas, basing her claim upon her assertion that the handling of the unusually large mail on that date was beyond her physical strength and that she asked her employer for help, which it refused. The Court below submitted the case to the jury on that charge of negligence, refusing the Railroad's request for directed verdict made at the conclusion of the plaintiff's testimony, and repeated at the conclusion of all the testimony. The jury returned a verdict for $5,700.00 in favor of plaintiff-appellee and against defendant-appellant upon which judgment was duly entered, from which this appeal is prosecuted.

The Railroad contended before the Court below that Thomson had failed completely to sustain the charge of requested and refused assistance upon which her action was based, and argues here that the Court below committed er-

ror in refusing to direct the jury to return a verdict in its favor. A careful review of the evidence discloses that the Railroad's position is sound and that the Court below should have directed a verdict in its favor.

The evidence of plaintiff showed that she began working for the Railroad in 1943, being then on the extra board as telegraph operator and working only at infrequent intervals followed by a period during which she ceased working entirely. She went back to work in 1951 and was placed again on the extra board and worked at several agencies of the Railroad. She "bid in" the job at Monahans, Texas, and went regularly to work there in October, 1952, and worked until she claims to have been injured December 3rd of the same year. She knew when she claimed her right to the Monahans assignment that, although the same work at some stations on the road did not involve the handling of baggage or mail by the agent-operator, the job at Monahans did involve such handling.[1] Upon entering upon her duties at Monahans she began the usual handling of mail and had some conversation with the agent, who was her superior, about the clothes she should wear. The agent preferred that she wear female attire, but she objected mildly to that because it was hard to get onto and off of the mail trucks while attired in a "skirt and hose"; and she found it particularly awkward when men were in view. For some reason she stopped for a while participating in the handling of the mail and the duty was done entirely by a couple of laborers who worked at the station. When, about a month before the day of her injury, the agent observed that she was not performing her duties in connection with the handling of the mail, he told her that this was a part of the duty of her position and that she should continue to perform that duty. They had a further conversation at that time about the wearing of "hose and skirts", and the agent again expressed a preference that she wear the clothes normally worn by ladies, but emphasized to her that the job came first and that she could dress as she desired or as she thought necessary for the proper performance of her duties. At no time did she intimate that she felt that the work was too strenuous for her or that she desired to have assistance in performing it.

On the morning she stated she received the injuries, she handled the mail alone as she had done on frequent other occasions and as was the usual custom. The Post Office authorities had placed on the flat surface of the usual four-wheeled truck employed in such work something like ten to fifteen mail sacks. She pushed the truck along the asphalt platform

---

1. She testified that, in September, 1951, she had bid in the job at Colorado City as agent-operator, and that her duties were "to handle train orders, copy telegrams, * * * sell tickets, handle mail, baggage, check baggage, and do such clerical work as the agent at each station sees fit to assign * * *". When asked what her work was to be when she bid in the Monahans job, she replied:

"Well, I was to work from 12:00 midnight until 8:00 in the morning, sell tickets, handle my train orders, and my train, take care of any clerical work that the agent saw fit to assign to me, and work the passenger train, I had one passenger train on my shift and it came at 7:20 in the morning and I was to work the mail and baggage, just anything that the agent saw fit to assign."

She further testified that it was "normally part of the agent-operator's job to handle mail"; and that "there are very few places, like I just said, that doesn't handle the mail, that doesn't have any mail to handle * * *"; and that she had "worked the mail as an operator, and that is kind of standard throughout the railroad * * *". She further admitted that she knew what her duties would be before she moved to Monahans and that they would involve the handling of the mail. When asked how many mail pouches she handled on the day of her injury she replied: "Like I say, I worked the mail so many places I couldn't say as to a number, but I know that there was quite a lot of them * * * say ten or twelve, or maybe fifteen * * *." The mail on the morning train, No. 2, was by far the lightest of any train stopping there.

and backed it into the mail car and chocked the wheels. She then mounted the truck and "moved" the mail sacks onto the floor of the mail car.[2] Some of the bags, according to her estimate, weighed as high as fifty to seventy-five pounds each. When the truck had been completely unloaded, the mail clerk on the car began lifting the sacks of mail destined for Monahans onto the truck and appellee would "put it and stack it on my cart." She did not testify how many sacks came off of the mail car or how much they weighed.

Before she completed this operation she found herself suddenly fatigued and, when the unloading had been completed and she had gotten down off of the truck, she experienced severe pain in her back. She did not remember whether she rolled the truck away from the train or not. She worked on about twenty or thirty minutes until her normal quitting time and then went home. A couple of days later she consulted a doctor and was subsequently carried to the Railroad hospital where she was entitled to free treatment by reason of contributions made by her each payday. She remained in the hospital until March, 1953, except for four days' work she performed in January. She worked with fair regularity from March, 1953 until October, 1954, being careful each time to bid in a job which did not entail the handling of mail or baggage. The medical testimony disclosed that she had serious trouble in her back. The doctors for the Railroad Company attributed the trouble to congenital pathology, while plaintiff's doctors were of the opinion that the heavy work aggravated an already existing arthritic condition of the spine.

Appellee offered no evidence at all to sustain the basic charge of her complaint[3] that she asked for and was refused assistance in handling the "unusually large quantity of mail" on the day of her injury.

The Court below submitted the case to the jury on that charge of negligence alone, using a most identical language.[4] Appellee was asked several times if she requested any additional help or asked certain named individuals to help her, and she stated categorically that she did

2. " * * * and then you climb up on the wheel to the cart, and then you start moving the * * * mail from the cart into the car, into the mail car, and he [the railway mail clerk] works it out of the way; you are not supposed to get into the car and he is not supposed to get off of the car on to the cart; * * * and then he lifts the, what he has for me, off, and I put it and stack it on the cart."

Apparently the floors of the mail truck and the car were substantially on a level. Appellee did not make it clear whether she lifted the bags to the car or dragged them; but it is clear that the railway mail clerk lifted the incoming mail onto the mail truck.

3. Both her original complaint and her amended complaint contained these allegations:

"Plaintiff says that on or about 3 December, 1952, Plaintiff was employed by the defendant as an agent at Monahans, Texas. That as an agent, her duties included among other things meeting the trains as they arrived in this station. On this day when the Plaintiff met Number two train, she noticed that there was an unusually large quantity of Christmas mail to be unloaded from the train, and realizing that she was just a woman and that the mail was extremely heavy, *she asked her immediate superior*, a man whose name is unknown to the Plaintiff at this time, *for help* in unloading this heavy mail, *but that her superior not only failed, but refused to give her any assistance whatsoever in unloading* this heavy mail even though he and the other people were available for assistance. *Plaintiff says that this immediate superior then ordered the Plaintiff to unload the mail* [and] as she was attempting to do so, she injured her back * * *." [Emphasis supplied].

4. The Court charged the jury in part:

"Plaintiff alleges * * * that her duties included among other things meeting the train upon its arrival at the station and to receive and look after the incoming mail; that on said date she observed unusually large quantities of mail, approaching the Christmas season. She asked her superiors for help to unload the heavy mail, which was refused her although assistants were then available, that she was then ordered to unload the mail * * *."

not ask any help.[5] The testimony quoted in the note represents the closest approach made by appellee to sustaining the charges on which she relied in her complaint. The agent and all of the other employees testified that they were not requested to help with the mail and the agent further stated that at no time had he ever told appellee or anyone else that the duties must be performed without assistance.

At all events, taking appellee's own statements and drawing therefrom all permissible inferences, there is no tendency on the part of the evidence to sustain the charge quoted above that she had, on December 3rd, requested assistance in unloading an unusually large quantity of Christmas mail and had been refused such assistance. By basing her complaint on this allegation and by placing it before the jury as the sole charge of negligence, she recognized that, under the law, she had no case unless she could sustain this charge of negligence.[6]

■ Under the simple terms of the Federal Employers' Liability Act[7] negligence is the basis of liability. The Railroad here was not an insurer of plaintiff's safety, and before recovery can be had plaintiff must show by the evidence that her injury was the proximate result of the Railroad's charged negligence.[8] "The Act does not make the employer the

---

5. When asked on cross-examination (the matter not having been covered on direct examination) whether she asked Jack Kittrell or Slick Sligh to help her with her mail, she replied, "No. I had been instructed I was not to ask, I couldn't have anyone to work the mail with me, there wasn't any need to ask". When pressed a little further with the question: "Actually, wasn't the duties outlined to you to assist with the mail and baggage?", she replied: "No. Mr. Higginbotham told me, now, this is just oral, but this is what he said, the best I can remember, I was to take this one car, this one truck, and take it out and take what is on there and put it on the train and take this on the train and bring it and put it back into the baggage room."

As stated, her counsel, on direct examination, developed, in meticulous detail, everything which was said between her and her superior and she did not intimate that she had been instructed to perform the mail handling alone or was not to request assistance.

6. The complaint mentions the failure of the Railroad to furnish plaintiff a reasonably safe place in which to work, but no evidence at all was offered on that ground, and it may be considered abandoned.

Appellee argues in her brief that it was negligence for the agent at Monahans to require her to work in a dress instead of men's clothing, and also that it was negligence for the Railroad to put plaintiff back to working the mail after she had been exempted from it for a while. It is undisputed, however, that she bid the job in with knowledge that she had to perform these duties. No law is cited tending to support that contention nor the thesis that plaintiff was entitled to special consideration because she was a woman.

7. "Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier * * *."

8. Ellis v. Union Pacific Railroad Co., 1949, 329 U.S. 649, 67 S.Ct. 598, 600, 91 L. Ed. 572; Brady v. Southern Railway Company, 1943, 320 U.S. 476, 64 S.Ct. 232, 234, 88 L.Ed. 239; Lavender v. Kurn, 1946, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; and Wilkinson v. McCarthy, 1949, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497.

There has been an undercurrent of criticism of F.E.L.A. because proof of negligence is made a *sine qua non* of recovery. Cf. dissent of Mr. Justice Frankfurter in Stone v. New York, C., & St. L. R. Co., 344 U.S. 407, 410, 73 S.Ct. 358, 97 L.Ed. 441, and also his dissent in the Wilkinson case, supra, 336 U.S. at page 66, 69 S.Ct. at page 419. But Congress has not seen fit to turn this statutory cause of action into a Workmen's Compensation Act, and the Supreme Court has steadfastly disavowed any intention to endeavor to make such a change itself. The concurring opinion of Mr. Justice Douglas in the Wilkinson case, 336 U.S. at pages 68–73, 69 S.Ct. at pages 420–423, contains a good discussion of the attitude of the Supreme Court in F.E.L.A. cases.

insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur." Ellis v. Union Pacific Railroad Co., supra. "The weight of the evidence under the * * * Act must be more than a scintilla before the case may be properly left to the discretion of * * * the jury. * * * When the evidence is such * * * there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by * * * directed verdict * * *. The rule as to when a directed verdict is proper * * * is applicable to questions of proximate cause." Brady v. Southern Railway Company, supra.

Our attention is called to two cases under F.E.L.A. which are closely in point. In Louisville & Nashville Railroad Co. v. Green, 1951, 255 Ala. 642, 53 So.2d 358, recovery was sought under the Act by a night station porter who claimed to have been injured because of insufficient help in lifting mail onto a truck in the depot at Athens, Alabama. There were about fifty mail bags on the truck and he attempted to place one weighing from 100 to 150 pounds on top of this load about twelve inches higher than his head. The bag fell onto Green's shoulders, causing double hernia. The Alabama Supreme Court discussed the Supreme Court case of Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, commented on the complete abolition of the doctrine of assumption of risk, and rejected any consideration of Green's contributory negligence, concluding, 53 So.2d at page 363: "Here the employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances * * *. On the record before us we cannot say that the issue of appellant's negligence is debatable, and that fair-minded men might reach different conclusions. The employer is not liable for injuries which

it could not avoid in the observance of its duty of care. The situation here simply shows a regrettable incident for which the appellant is not responsible, since its duty to appellee was fully discharged. The affirmative charge should have been given for appellant. * * "

In Wadiak v. Illinois Central R. Co., 7 Cir., 1953, 208 F.2d 925, 929, a judgment under F.E.L.A. was reversed for failure of the trial court to direct a verdict for the railroad. Wadiak was engaged with and under the supervision of his gang boss in lifting barrels weighing about 300 pounds each. All of them were lifted by a chain hoist except the last, which his co-laborer suggested they raise by hand. In so doing, Wadiak injured his back to such an extent that he was forced to retire on pension. No request was made of the railroad to furnish additional help. The Court of Appeals reversed a judgment allowing recovery, using this language: "In the absence of proof that such aid was sought and was denied to him or that any need for help was brought to defendant's notice, plaintiff cannot rely on this contention. [Citing the Green case, supra.]" In support of the doctrine that "On this record, indulging every permissible presumption in plaintiff's favor, there was insufficient evidence to take the case to the jury on any of the charges of negligence", the court cited our case of Reynolds v. Atlantic Coast Line Railroad Co., 5 Cir., 1952, 196 F.2d 643.

As tending further to support these cases see also August v. T. & N. O. R. Co., Tex.Civ.App.1954, 265 S.W.2d 148, writ refused N.R.E.; Great Atlantic & Pacific Tea Co. v. Evans, 1943, 142 Tex. 1, 175 S.W.2d 249; and Jackson v. Illinois Northern Ry. Co., 7 Cir., 1955, 224 F.2d 76.

Appellee cites no authorities supporting her position, her only two federal court decisions [9] being easily distinguishable. The Patton case did not in-

---

**9.** Patton v. Texas & Pacific Ry. Co., 1901, 179 U.S. 658, 21 S.Ct. 275, 45 L.Ed. 361, and Blair v. Baltimore & Ohio R. Co., 1945, 323 U.S. 600, 65 S.Ct. 545, 547, 89 L.Ed. 490.

318

volve either lifting or the sufficiency of the number of workmen to do the work at hand. The Blair case did involve the duty of the master to furnish sufficient competent help to move some steel pipes weighing about 1,000 pounds each, but the facts involved caused the decision to rest upon legal principles not applicable here. There, Blair went to his superior telling him that the pipes were too heavy for three men to unload, but his suggestion was rejected and he was told to go ahead and do the work or the railroad " 'would get somebody else that would' ". Moreover, the pipes were greased, which caused the pipe injuring Blair to slip as the result of which the other two men released their holds, producing a kick-back which occasioned Blair's injury. A defective condition of the warehouse floor also contributed to the injury.

The case of Stone v. New York C. & St. L. R. Co., 1953, 344 U.S. 407, at page 408, 73 S.Ct. 358, at page 359, 97 L. Ed. 441, also involved a strained back resulting from pulling too hard in an effort to remove a cross-tie which had been made fast by old spikes protruding downward from the tie into the ground. Stone complained that the two men assigned to the job could not perform it, but he was told by his superior to pull harder or " 'I will get somebody that will' ". Stone's efforts to obey this command resulted in his back injury. The case is distinguished by the specific protest made against following a course which would over-tax the employee's strength to which was added criticism of the employment of that particular method of removing ties under the circumstances in preference to others which were available. Two cases involving physical strain have been decided by this Court,[10] but in each of those protest was made to the master at the time of the excessive strain and in each instance the servant was told by the master, in spite of the protest, to proceed with the work which occasioned the injury.

■ The present case is not like any of those cited, it being admitted that appellee did not call the Railroad's attention to the unusual quantity of mail on the day of her claimed injury and did not ask any assistance in handling it. Her claim is based rather on the sum total of the operation of loading and unloading the mail on this particular day than on the weight of any particular sack of mail. There is no showing that she had ever intimated to the Railroad that the method of doing the work was improper, that the quantity of the work was too great for her to perform or that the presence of any other workman on the truck —if there were room for more than one —would have been of assistance to her except to replace her in the doing of the work. She pitched her case entirely on the assertion that she asked for additional help to handle the unusually large amount of mail on that particular day, and the Court submitted the case to the jury on that theory alone. Appellee failed entirely to offer any evidence to support that charge of negligence and her proof failed to sustain any other theory of possible recovery. We are of the opinion, therefore, that the Court below should have sustained the motion for directed verdict. For its failure so to do, its judgment is reversed and the case is remanded to the lower Court for entry of a judgment in favor of appellant.

Reversed.

10. Montgomery Ward & Co. v. Lindsey, 5 Cir., 1939, 104 F.2d 882, and Pittman v. Schultz, 5 Cir., 1942, 125 F.2d 82.