**LOUISIANA & ARKANSAS RAILWAY COMPANY, Appellant,**

v.

**Harry GARY, Appellee.**

**No. 9695.**

Court of Appeals of Texas, Texarkana.

Sept. 19, 1989.

Rehearing Denied Sept. 19, 1989.

Rehearing Denied Oct. 10, 1989.

William C. Gooding, Gooding & Dodson, Texarkana, for appellant.

Carl R. Roth, Jones, Jones, Curry & Roth, Marshall, for appellee.

GRANT, Justice.

Louisiana & Arkansas Railway Company (L & A Railway) appeals from an adverse judgment in an action brought by Harry Gary for a personal injury under the provisions of the Federal Employers' Liability Act. 45 U.S.C.A. §§ 51–60 (West 1986).

The cause was tried without a jury, and the court filed findings of fact and conclusions of law. The court found that negligence proximately causing Gary's injury was seventy percent attributable to L & A Railway and thirty percent attributable to Gary. After making appropriate reductions in damages found by the court for Gary's negligence, the court awarded Gary $603,149.81.

The injury occurred on November 26, 1984, at Fox Switch near Karnack, Texas. At the time of the accident, Gary was thirty-five years of age and had been with the railroad maintenance-of-way department for over thirteen years. His duties included replacing cross-ties, laying rail, unloading rail, and performing other heavy work.

L & A Railway contends that the trial court erred in rendering judgment in favor of Gary because there was no evidence to support the court's findings of fact and conclusions of law numbers 3, 4, and 5 and because, as a matter of law, Gary's negligence was the sole cause of his injury.

■ The review of evidence in an FELA case is governed by federal standards. This Court must determine whether the evidence was legally sufficient to support the verdict. *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); *Atchison, Topeka & Santa Fe Railway Co. v. O'Merry*, 727 S.W.2d 596, 599 (Tex.App.—Houston [1st Dist.] 1987, no writ). In principle, the "no evidence" test in state practice is not distinguishable from the federal standard. Both tests require valid findings of fact to be supported by more than speculation, conjecture, and possibility. *Elgin, Joliet & Eastern Railway Co. v. Gibson*, 355 U.S. 897, 78 S.Ct. 270, 2 L.Ed.2d 193 (1957); *St. Louis Southwestern Railway Co. v. Greene*, 552 S.W.2d 880 (Tex.Civ.App.—Texarkana 1977, no writ). A no evidence point is a question of law. In deciding a no evidence point, we consider only the evidence and the reasonable inferences therefrom, viewed in the most favorable light, that will support the findings. All evidence or reasonable inferences to the contrary are rejected. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981).

■ We shall first discuss L & A Railway's contention that there was no evidence to support the trial court's findings of facts and conclusions of law number three, which was entered as follows:

3. Albert Forgione was negligent in failing to exercise ordinary care in the loading and supervision of the loading of the rails onto the flatbed trailer. Forgione's negligence resulted in the rails becoming entangled and thereby created a hazardous and unsafe place for the Plaintiff to perform his work. This negligence contributed and played a part in causing the injuries sustained by the Plaintiff.

On the day in question, Gary and James Caesar, using hand tools, were unloading thirty-nine-foot rails weighing three-quarters of a ton each from a flatbed truck. Gary had unloaded rails using the hand method on many occasions before the day of the injury. The first two rails on the top tier rolled off without any problem. The third rail had dropped between the rails on the bottom layer, was tilted at an angle and was in a bind between the other rails. Gary injured his back while he was trying to untangle the rails with a rail turner.

Truck driver Albert Forgione had supervised the prior loading of the truck. Forgione put slats beneath the upper layer of

rails to make them easier to roll off the truck and to keep them from dropping down between the rails on the bottom stack. Gary testified that on the day of the accident, the wooden slats on the truck on which the rails rested were broken up. He testified that:

> Q. And the way they're supposed to keep them that way is by putting these boards or slats between them?
>
> A. Put the boards or slats between them and use good boards, you know, like on the bottom they have four by fours and then when they got them to the top they come up with one by fours, and it was pine, you know, and you know you set all the weight on pine, you know how pine is soft wood and they just busted up.

He further testified that:

> Q. What about using pine instead of something like oak?
>
> A. Oh, yes, see that's another problem. They used them pine one by fours and they just mashing (sic) down and it busted them up.
>
> Q. They just weren't sturdy enough to handle sixteen hundred pound rails—?
>
> A. That's right.
>
> Q.—being set down on them; is that right?
>
> A. That's right.
>
> Q. Now, it was because the boards weren't the right size and the right materials that you believe they broke—?
>
> A. Yes, sir, I believe that; that's right.
>
> Q. —when they were dropping these rails on the truck?
>
> A. When they were loading them on the truck, they busted them—had to break them.
>
> Q. Now, and it was because the boards were broken that the rails had gotten entangled?
>
> A. Yes, sir, they—that's how it fell. We didn't have nothing separating the top from the bottom by—.

Forgione agreed that the rail that became entangled would not have dropped down into the bottom layer if the right size, strength and length slats had been used. He further conditioned this on the truck being properly loaded and tied down, and the load being properly hauled to the location. Forgione testified that when good strong boards are used between the layers of rail, the rail will not get entangled.

L & A Railway takes the position that this evidence amounts to no more than a res ipsa loquitur inference. Gary did not plead res ipsa loquitur. A res ipsa loquitur inference arises when there is proof that the instrumentality causing the injury was in the defendant's exclusive control and the accident is one which would not ordinarily occur in the absence of negligence. The evidence in the present case deals with a specific act of negligence: the failure to select boards of the proper size and material to withstand the weight of the rails. Evidence was introduced without objection that the boards selected and used by Forgione in the loading were not the right size nor the right material to be sturdy enough to hold the weight of the rails. There was also testimony that for that reason the boards used for slats had broken up because they were not sturdy enough to hold the weight of the rails. This evidence does not depend on any inferences that the material had inherent defects, but it deals with whether the boards were of the right size and material to withstand the weight of the rails. This is some evidence of Forgione's negligence.

■ L & A Railway next contends that there was no evidence to support the trial court's finding of fact and conclusion of law number four, which stated the following:

> 4. John Matlock, the foreman of the crew in which the Plaintiff Harry Gary was working on November 26, 1984, was negligent in failing to exercise ordinary care *to properly instruct and supervise the Plaintiff as to the proper methods and procedures to be followed when confronted with unloading a rail which had become entangled or in a bind.* This negligence contributed and played a part in causing the injuries sustained by the Plaintiff. (Emphasis added.)

There is no evidence as to what John Matlock instructed or failed to instruct Gary as to the proper methods and procedures to be followed when confronted with unloading an entangled rail. Gary testified that there was a rule that a worker should keep his back straight and not to exert any more force than is necessary. He also testified that he was stooping at the time of the injury. L & A Railway introduced an exhibit which it represented to be a rule of the railroad which states the following:

691. Lifting beyond normal physical capabilities is prohibited. Avoid jerking or twisted positions and obtain help to lift or handle heavy or cumbersome objects. When lifting:
(a) Have secure footing.
(b) Bend the knees and keep the back erect.
(c) Take firm grip on the object and slowly straighten the legs.

The foreman, John Matlock, was not present at the time of Gary's injury. Gary testified that if the rails had been loaded correctly, two men could handle the job, but if he had a choice, there would be more than two men because it was heavy work. Gary told the jury that he recognized that he was going to have difficulty in rolling the entangled rail off the truck, but it was up to him to get the rail out of a bind. He testified that if his foreman had been working with him in the area, there would have been no problem, but it was not feasible for him to stop work and call his foreman to ask for help and that he was expected to do the job that was assigned to him. He admitted that a supervisor could not stand over him and tell him how much force to use.

Caesar testified that it would be safer when there was a tangled rail to have more than two men to do the work. He also testified that it would be safer to do it with a burro crane, but there was no testimony that there was a burro crane available. He later testified that two people can do the unloading work safely and that it was not customary to unload the rails without a burro crane. He testified that the work would be less strenuous if there was more

help and that he preferred to have three people.

Matlock testified that he expected Gary and Caesar to use their best effort to get the rail off the truck before calling him. Matlock testified that it was not unusual for a rail to get into a bind. Roy Norwood, another supervisor, testified that he looks at his men and knows their capabilities so that he can get enough men and equipment to do a job.

The evidence of Matlock's negligence was weak, but we are not determining the sufficiency of the evidence. We are determining whether there is any evidence that Matlock's negligence played any part in causing the injury. *St. Louis Southwestern Railway Co. v. Greene,* 552 S.W.2d 880. The United States Supreme Court held an employer negligent for failing to provide an employee with sufficient help to handle the assigned task. *Thomson v. Texas & Pacific Railway Co.,* 353 U.S. 926, 77 S.Ct. 698, 1 L.Ed.2d 722 (1957), *reversing* 232 F.2d 313 (5th Cir.1956).

The factfinder in the present case could have inferred that Matlock was negligent in his supervision in not providing for an additional worker to help unload the rails. The factfinder could infer from the situation that if more workers had been present, Gary would not have been required to exert as much force and might not have hurt his back. These are reasonable inferences from the evidence upon which the trial court could have based its factual conclusion of negligent supervision. Further, the policy requiring an employee to make an effort to do the task before asking for help could be considered a contributing factor to Gary's injury.

The trial court's findings of facts and conclusions of law number five was a finding that the combined negligence of Forgione and Matlock created an unsafe place and and condition for Gary to perform his work. This finding is no more than a reiteration of what the trial court had already found in findings of fact and conclusions of law numbers three and four, and, as previously stated, there is some evidence to support those findings.

The judgment of the trial court is affirmed.